JOSEPH M. THOMPSON, RESPONDENT, *v.* SALT LAKE RAPID TRANSIT CO., APPELLANT.

STREET RAILWAYS—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE —CHARGE OF THE COURT—PREVIOUS AND CONTINUED NEGLIGENCE—DEFECTIVE BRAKES AND MOTORS—DEAF MUTE.

1. When both parties are negligent, the true rule is held to be that the party who last had a clear opportunity to avoid the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it.

2. *Proximate Cause—Contributory Negligence.*

A plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding the injury to him.

A street car company operating electric cars in a public street which increases the hazards and dangers to pedestrians is held to a degree of care proportionate to the increased danger arising from the use of such propelling power. The greater the danger, the greater the care must be to avoid injury.

3. *Deaf Mute.*

Where deceased was deaf and dumb, but a well-grown boy, of 14 years, possessing average intelligence and good eyesight, *held* that, under such circumstances, he was the more bound to use his eyesight, and that the question of his contributory negligence was properly submitted to the jury.

4. *Defective Appliances.*

Where it appeared that when the motorman saw the deceased approaching the track, with an evident intention to cross, without seeing the car, the motorman applied the brakes, but they were so defective that they did not work, and he received a shock from the defective motor that delayed his purpose for a second; that he could not stop the car until the injury was done, because of the defective brakes; that the car ran 50 feet after striking the deceased; that the defendant had repeated notice of the defective brakes and motor, but failed to repair them; that, if the car had been in repair, it could have been stopped within 8 feet,—*held*, that the defendant was negligent in the use of such car.

5. *Same—Proximate Cause.*

If the defendant knowingly placed in operation upon the public street a defective car that could not be controlled because the appliances provided for that purpose were out of repair, and the injury complained of was occasioned by such defective brakes and appliances, and the motorman was unable to avoid the effect of the contributory negligence of the deceased, because of such defects, then it could properly be said that the defendant's negligence was the proximate cause of the injury.

6. *Same—Defendant cannot Plead his own Negligence as a Defense.*
    The defendant should not be allowed to excuse its own want of
    reasonable care, and avoid liability, by showing that, prior to
    and at the time of the accident, it had knowingly been negli-
    gent in keeping its car and appliances in order and repair, and
    that on account of such negligence it was unable to prevent
    the injury complained of at the time by the use of ordinary
    care.

(No. 882.    Decided Feb. 19, 1898.)

Appeal from the Third district court, Salt Lake county.
A. N. Cherry, *Judge.*

Action by Joseph M. Thompson against the Salt Lake
Rapid-Transit Company. Plaintiff had judgment, and de-
fendant appeals. *Affirmed.*

This action was brought to recover damages for negli-
gently causing the death of the plaintiff's son. The com-
plaint charges that the defendant negligently and care-
lessly failed to have its cars supplied with suitable brakes,
switches, and motors, and that by reason thereof, and
of the negligent and careless operation of its car, it was
driven on and over the plaintiff's son, a minor child of 15
years, who died from the effects of the injuries received.
The testimony on the part of the plaintiff was to the effect
that, upon the day in question, the defendant's car was
proceeding in an easterly direction along Fourth South
street, Salt Lake City, at the rate of 6 or 7 miles an hour;
that at this time the plaintiff was engaged in vending in
said city, and had stopped his cart on the east side of the
street, at a distance of about 40 feet from the railroad
track; that the deceased, a deaf and dumb boy, between
14 and 15 years of age, was with him, and was sent on an
errand across the street, and across the railroad track.
The plaintiff, when he sent his son across the street, did

not look up and down the track to see if the car was approaching. If he had done so, he would have seen the car in question. No obstruction prevented his view of the car. After the boy had started across the street, the plaintiff was busy, with his face turned in the opposite direction. The boy had proceeded but a short distance when the plaintiff's attention was attracted by the ringing of the bell on the street car. He looked up, and saw the car approaching, at a distance of about 39 feet from the place where the boy was. At the same time, the boy was about 20 feet from the place of the accident. He said at first he was not alarmed; that he did not think there was any danger; that, if the boy had had his hearing, the ringing of the bell would have attracted his attention, but when the boy had gotten within three or four feet of the track, and the car was then within a short distance, he then for the first time became alarmed. Plaintiff did not see the deceased look up or look in the direction of the approaching car. The motorman rang the bell three or four times, and then, finding it did not attract the attention of the boy, attempted to stop the car, but failed; and the car struck the boy, who died from the effect of the injuries. The car was 40 or 50 feet from the plaintiff at this time, and the boy was passing on north, towards the railroad track, seemingly intent on his errand, and without noticing the car. The car struck the boy as he passed over the north rail. The car passed on about 58 feet beyond where the boy was struck before it was stopped. The boy attended school, and could understand signs in writing. Plaintiff did not consider it as safe for the boy to be out as it would be if he could hear and speak. The boy had no other defect except that he was deaf and dumb. He was a well-grown boy, a little over the average size, and equaled the average of intelligence and quickness of com-

prehension as compared with children in the full possession of their faculties. He knew of the existence of street cars and lines. The motorman testified that the car was running at a rate of about 6 miles an hour; that he saw the boy coming north when about 20 feet from the track; that he put his foot on the gong, and turned off the power, intending to reverse the car; that, when he turned off the power, he had one hand on the brake, and received a shock from the motor that disabled him for a second; that the hind brake of the car was loose, and kicked off; that the brakes on the car were not in good condition; that the car had been disabled in a collision in March before the accident, and after that it could not be controlled by the brakes; that shocks from the brakes were frequent; that, when he turned off the power, he intended to reverse but for the shock he received; the car had been out of repair for a considerable length of time before the accident, and witness had reported it to the proper officer of defendant every time he used it for weeks prior to the accident; that the brakes would not stop the car; that he applied the brakes as soon as he saw the boy was likely to cross the track, and did all he could to warn the boy and stop the car, but could not stop it in time to save him; that the boy did not look up towards the car, but looked straight ahead; that, if the car had been in repair like other cars, he thought he could have stopped it, by reversing, in about 8 feet. Other witnesses testified that the motor was out of repair; that the axles were sprung; that the brakes would not work; and that motormen would frequently be shocked by electricity from the motor. Such reports came from the motormen to the night inspector very frequently before the accident. The defendant offered testimony tending to show that the car and brakes were in good condition at the time of the accident.

*Williams, Van Cott & Sutherland*, for appellant.

We call attention to a few of the many adjudicated cases where under a state of facts similar to those in the case at bar a recovery was not permitted. *Ehrishman* v. *City Ry. Co.*, 15 Pa. St. 180; *Carson* v. *St. Ry. Co.*, 147 Pa. St. 219; *Ward* v. *Electric Ry. Co.*, 17 N. Y. Sup. 427; *Hamilton* v. *Third Ave. Ry. Co.*, 26 N. Y. Sup. 751; *Davidson* v. *Denver Tramway Co.*, 25 Pac. Rep: 920; *Kelley* v. *Hendries*, 26 Mich. 255; *Boerth* v. *West Side Ry. Co.* (Wis.), 58 N. W. Rep. 376; *Chicago Ry. Co.* v. *Burt*, 69 Ill. 389; *Philadelphia Ry. Co.* v. *Peebles*, 67 Fed. Rep. 591; Booth on Street Railway Law, Sec. 5316; *Thompson* v. *Street Ry. Co.*, 145 N. Y. 196; *Buzby* v. *Phila. Traction Co.*, 126 Pa. St. 159.

In the case of a very young child, where it is not clear that he is of sufficient age and intelligence to understand and appreciate the danger, the question should be submitted to the jury, but where it is clear, as in this case, that plaintiff was of sufficient age and intelligence to understand such danger, he should be held responsible as a matter of law. *Twist* v. *Ry. Co*, 37 Am. and Eng. Ry. Cas. 336; *Wendell* v. *Ry. Co.*, 91 N. Y. 420; *Tucker* v. *Ry. Co.*, 124 N. Y. 308; *Reynolds* v. *Ry. Co.*, 58 N. Y. 248; *Masser* v. *Ry. Co.*, 68 Ia. 602; *Rogers* v. *Lees* (Pa.), 12 L. R. A. 216; *Robinson* v. *Ry. Co.*, 7 Utah 493; *Messenger* v. *Dennie*, 50 Am. Rep. 295; *Ec'iff* v. *Ry. Co.*, 64 Mich. 196; *Nagle* v. *Ry. Co.*, 32 Am. Rep. 413; *Hays* v. *St. Ry. Co.*, 8 Am. St. Rep. 624; Beach Contr. Neg., p. 58 *et seq.*; *Keefe* v. *Ry. Co*, 54 Am. St. Rep. 542; *Smith* v. *Ry. Co.*, 25 L. R. A. 287; *Ry. Co.* v. *Moseley*, 57 Fed. Rep. 921; *Kirtley* v. *Ry. Co.*, 65 Fed. 386; *Watson* v. *St. Ry. Co.*, 34 S. W. Rep. 573.

*Richards & Richards*, for respondent.

MINER, J   (after stating the facts):

The court submitted the question of the negligence of the defendant, the contributory negligence of the deceased, in connection with his age, capacity, and condition under the circumstances, and the condition of the car, to the jury. The court instructed the jury, among other things, that "even though you believed the son of the plaintiff was guilty of contributory negligence by crossing the track without observing whether or not the cars were running thereon and in operation, or by any other act, and that, if he had been free from such contributory negligence, the injury would not have occurred, yet if the motorman, after the act of contributory negligence complained of, had the opportunity, or could, by the use of reasonable care, had the brakes and motor of the car been in proper condition, have avoided the accident, then the act of said motorman, which is the act of defendant company, was the proximate cause of the injury complained of by the plaintiff." "If you believe from the evidence that the defendant company exercised due care and caution in operating the car at the time of the accident, and that the accident was not in any way the result of any defect in the appliances for controlling the car, then the defendant would not be liable." Exceptions were taken to these instructions. Appellant's counsel contend that conceding the fact that the defendant was negligent in sending out a defective car, and that the deceased was also negligent in crossing the track in front of the car, in such a case it was the only duty of the defendant, after discovering the dangerous situation of the deceased, caused by his own negligence, to exercise all reasonable care and diligence at his command at the time of the injury, and that when the motorman did all he could to stop the car, although its brakes were defective, the defendant could not be held

liable, even if the car had been sent out in a defective condition with the defendant's knowledge; that, as nothing could be done by the moterman after the discovery of the boy's negligence to remedy the defective condition of the car, all that he was required to do was to use the defective appliances which he had to stop the car; that, if the deceased was guilty of contributory negligence, the unsafe and defective condition of the car, although known to the defendant, was not the proximate cause of the injury. The result of such a doctrine would be that under such circumstances, when the defendant discovered negligence in a plaintiff, he could legally excuse the exercise of his own want of reasonable care, by showing that its appliances and brakes were in such a wretched condition at the time, on account of its previous and continued negligence, that it was incapacitated from preventing the injury complained of at the time by the use of reasonable care. This position of the able counsel for the defendant is not only ingenious, but is apparently supported by some authority bearing upon the general question of contributory negligence; but we cannot subscribe to such a doctrine when applied to the operation and management of electric cars upon the streets in a city where the lives and safety of pedestrians are largely dependent upon the safe equipment and perfect condition of the appliances with which a street car is propelled, operated, and controlled. If such a doctrine should be established, it would practically place the exclusive right to the use of the street occupied by the street-car company in such company, to the exclusion of the citizen. If the citizen used the street, he would do so at the peril of his own safety. If such rules were applicable to contributory negligence, his safety in crossing a street where street cars were operated, with his right to recover dam-

ages in case of negligence, would largely depend upon the option of the company to keep its appliances in good repair. In case of his injury by its negligence, the fact of such negligence on the part of the company would be a bar to his recovery in case he contributed to the accident, which the company could, by the use of reasonable care, have avoided.

Persons traveling upon a public street, and crossing street-car tracks, are not held to the same degree of care as when crossing a steam-railroad track. This is so because in the one case the street car can or should be in such a condition as to be brought readily under control, and because the public have a right to travel upon all of the public streets, while such rights do not usually exist with reference to steam railroad tracks. When the streets were originally platted, they were not designed for street railways, but were confined to the right of public travel, with equal rights to all persons traveling thereon. The right conferred upon a street railway is not superior to that of the public at large, except the right to lay its tracks and operate its cars, which must be done with as little inconvenience as possible to the public travel. The right conferred includes no exclusive right to use the track or street. Neither has the citizen the exclusive right to the use of the street or track. The cars have the right of way in case of meeting vehicles or persons on the track, but each party is bound to exercise such ordinary care, prudence, and precaution to avoid injury as the surrounding circumstances may require. That which might be ordinary care in running horse cars might be gross negligence in operating street cars propelled by electricity or running at a high rate of speed. The electric car is propelled by a force that cannot be easily controlled

16 UTAH—19

except by such appliances as are expressly provided for that purpose. Without these appliances to control it, it becomes dangerous. Neglect to provide these safeguards for its control and management is negligence. "The duty of the company to recognize the rights of persons in the lawful use of the streets is imperative, and, if it adopts a propelling power which increases the hazards of such persons, it must be held to a degree of care proportionate to the increase of danger because of such propelling power. This is so because, the more dangerous the appliance, the more likely it is for casualties to happen; and, consequently, the greater the degree of care which must necessarily be exercised in order to avoid their occurrence." When the defendant placed its cars upon the track for service, the deceased had a right to expect that the usual appliances required for starting, stopping, and controlling the car were provided. Knowingly placing an electric car upon a track in a public street, and allowing it to run without such appliances for its control, is not only gross negligence, but it may amount to criminal negligence in case of injury to one without his fault.

In the case at bar, the motorman saw the deceased when he was about 20 feet from the track. He rang the bell, and as the deceased approached the track, with the evident intention of crossing without looking up or seeing the car, he applied the brakes, and intended to reverse the car; but the handle of the brake was so out of repair that he received an electric shock from the motor that disabled him for a second, and delayed his purpose. The brakes were out of repair, and would not work, and he could not stop the car with the appliances furnished until the injury was done; and, with all his efforts to stop the car, it ran about 50 feet after it struck the boy before he could stop it. Notice of the defective condition of the car had

been given the defendant company many times prior to the injury, but the defect had not been remedied. The testimony shows that, had the car been in repair like other cars, the motorman could have stopped it by reversing it in about 8 feet. These facts undoubtedly present a clear case of negligence on the part of the defendant company. If the motorman had not received the shock from the motor, he could have reversed and stopped the car. If the brakes had been in order, he might have stopped the car, and prevented the injury.

The testimony also shows that the deceased was deaf and dumb, but a well-grown boy, a little over 14 years of age, and possessed of at least average intelligence and quickness of comprehension. He was acquainted with street cars. His eyesight was good. He was of sufficient age and intelligence to understand the dangers that surrounded him in that locality, and, on account of the defect he was laboring under, was more bound to use the sight he possessed for his own safety. The question of his contributory negligence was properly submitted to the jury. 2 Shear. & R. Neg. § 481. Both parties being negligent, the true rule is held to be that " the party who last has a clear opportunity to avoid the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." 1 Shear. & R. Neg. § 99. It is also well settled that a plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding the injury to him. 1 Shear. & R. Neg. § 99. Under such circumstances, the obligation rested upon the defendant to exercise reasonable care to avoid the conse-

quences of the deceased's negligence; and the question as to whose negligence was the direct and proximate cause of the accident was one of fact for the jury to determine, under all the facts and circumstances of the case. The question was properly submitted for their determination, and they found against the defendant. Under the circumstances shown, it was clearly the duty of the defendant to have had the car supplied with sufficient brakes, motors, and appliances, with which it could be controlled. The motorman should have been furnished with sufficient means and suitable appliances with which to slow down and stop the car immediately on the first appearance of danger. Allowing the appliances adopted and in use for the purpose of controlling the car to become out of repair and useless for that purpose, and the inability of the motorman to stop the car for that reason, were doubtless, as the jury found, the proximate cause of the accident. The defendant should not be allowed to excuse its own negligence and want of reasonable care in such cases, and avoid liability, by showing that prior to and at the time of the accident he had knowingly been negligent in keeping his car and appliances in order and repair, and that on account of such negligence he was unable to prevent the injury complained of at the time by the use of ordinary care. If the defendant knowingly placed in operation upon the public street a defective car, that could not be controlled because the appliances provided for that purpose were out of repair, and the injury complained of was occasioned by such defective brakes and appliances, and the motorman was unable to avoid the effect of the contributory negligence of the deceased, because of such defects, then it would probably be said that the defendant's negligence was the proximate cause of the injury. In the case of *Penny* v. *Railway Co.* (Sup.), 40 N. Y. Supp. 172, it

appears that a box of sand was usually provided for use upon the car, but was not provided for use at the time of the accident. The court held the following instruction proper: " If the jury find that, by using the sand at the time this accident happened, the car might have been stopped in a shorter space than it was, it was a question for them to say whether it was not negligence on the part of the defendant that there was no sand on the car to use." We are of the opinion that the court committed no error in its instructions to the jury. *Hall* v. *Railway Co.*, 13 Utah 243; *Penny* v. *Railway Co.*, 40 N. Y. Supp. 172; 1 Shear. & R. Neg. §§ 481-483; 2 Shear. & R. Neg. §§ 481-483; Booth, St. Ry. Law, § 305; *Dederichs* v. *Railway Co.*, 13 Utah 34. We are also satisfied that there was evidence to support the verdict. We find no reversible error in the record. The judgment of the district court is affirmed.

ZANE, C. J., and BARTCH, J., concur.