## ILLINOIS CENT. R. CO. v. NELSON.

(Circuit Court of Appeals, Eighth Circuit. October 25, 1909.)

No. 2,902.

1. RAILROADS (§ 338*) — ACCIDENTS AT CROSSINGS — CONTRIBUTORY NEGLI-
GENCE — INJURY AVOIDABLE NOTWITHSTANDING CONTRIBUTORY NEGLI-
GENCE.

Under the rule that a railroad company may be liable for the injury of
a person at a crossing, notwithstanding his contributory negligence, if
after actually discovering his peril the servants of the company could by
the exercise of ordinary care have avoided his injury, but failed to do so,
the company cannot be held liable if such failure resulted from a defect
in appliances of the train, which existed previously, and which made it
impossible to stop the train in time, notwithstanding the efforts of the
trainmen.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099; Dec.
Dig. § 338.*]

2. RAILROADS (§ 338*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE
—INJURY AVOIDABLE NOTWITHSTANDING.

Plaintiff's intestate negligently walked upon a railroad crossing im-
mediately in front of a freight train, which was being backed toward the
crossing at a speed of four or five miles an hour, and was knocked down
between the rails, and two or three cars passed over him, causing his
death. It was claimed by plaintiff that he was not killed until struck by
the second car, and that the train could have been stopped before such
car reached him by the exercise of proper care after his danger was dis-
covered; but the evidence left both of such questions in doubt. It was
further shown that, as soon as the brakemen on the cars saw that de-
ceased was about to step upon the track, they shouted warnings to him,
and also signaled the engineer, and that as soon as the latter saw the
signals he did everything possible to stop the train; but he was not cer-
tain that he saw the first signal, nor was it certain that the failure to
stop within a shorter distance was not due to defective brake appliances.
Held, that such evidence did not warrant a recovery against the com-
pany; the negligence of deceased being conceded.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1099; Dec. Dig.
§ 338.*]

In Error to the Circuit Court of the United States for the District
of Nebraska.

Action by Benjamin Nelson, administrator of the estate of Henry
C. Miller, deceased, against the Illinois Central Railroad Company.
Judgment for plaintiff, and defendant brings error. Reversed.

William Baird (W. S. Kenyon, Thomas D. Healy, and J. M. Dickin-
son, on the brief), for plaintiff in error.

Francis S. Howell (Albert W. Jefferis, on the brief), for defendant
in error.

Before HOOK, Circuit Judge, and RINER and AMIDON, District
Judges.

HOOK, Circuit Judge. This writ of error assails a judgment ob-
tained by the administrator against the railroad company for negli-
gently causing the death of Henry C. Miller. About 11 o'clock in
the forenoon of a bright, clear day the deceased, who was 44 years of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

age, in the full possession of his faculties, and familiar with the locality, with no obstacle to his view of an approaching train, walked directly in front of it, and was run over and killed. It is not important whether the company was negligent in the first instance. The contributory negligence of the deceased was admitted in the petition, and the plaintiff, his representative, relied for recovery upon what is sometimes termed the "last chance rule." In the case of St. L. & S. F. R. Co. v. Summers (decided at this term) 173 Fed. 358, Judge Adams, speaking for the court, said:

"The rule is well settled that, notwithstanding such contributory negligence of a traveler in crossing a railroad track as precludes recovery for the primary negligence of the railroad company in operating its train so as to bring about a collision with him, yet another and different cause of action arises in favor of the traveler if for any reason he is exposed to imminent peril and danger, and the railroad company, after actually discovering that condition, could by the exercise of ordinary care have stopped its train, or otherwise have avoided injuring him, and failed to do so. Chunn v. City & Suburban Railway, 207 U. S. 302, 28 Sup. Ct. 63, 52 L. Ed. 219; Denver City Tramway Co. v. Cobb, 90 C. C. A. 459, 164 Fed. 41. But in the application of this rule care must be taken to avoid undermining the rule of contributory negligence. Such negligence of the traveler, in law, fully exonerates the railroad company from the consequences of its original negligence, and some new and subsequent act of negligence must arise to create a cause of action; and this new or secondary act must be established by proof unaided by the former acts, which have been excused by the traveler's contributory negligence. Let us, therefore, inquire whether the servants of the railroad company had actual knowledge of the peril of the decedent, and whether with that knowledge it exercised reasonable care to avoid injuring him?"

To bring his case within this rule of law, the plaintiff introduced witnesses who testified to the following facts: The train was composed of 16 freight cars, of which 9 were loaded and 7 empty. Seven were equipped with air brakes, and 9 not. They were being backed southward towards a street crossing at a speed of 4 or 5 miles an hour; the engine being at the north end. The deceased was walking westward towards the crossing upon the north side of the street; but his intention to cross the track in front of the cars was not discovered until too late. He was knocked prostrate between the rails, and was finally taken out 70 feet or so further south, and from under either the second or the third car, according to which of conflicting accounts is true. When it became apparent deceased was about to go upon the track, the brakemen on the cars hallooed and whistled to warn him, and then gave and repeated emergency signals. The engineer, with all possible speed after he received the signals, shut off steam, reversed the engine, applied the air, and let sand upon the rails. He said he did everything possible, and stopped as quickly as he could. The engine and its appliances were in good order. Witnesses testified for the plaintiff that under the conditions which were described the train could have been stopped within from 12 to 20 feet; whereas, it actually ran more than 100 feet after the collision. Deceased, when first struck, was knocked 4 or 5 feet, and fell between and parallel with the rails, with his head to the south. He lay face downward in that position until the first car had passed over him, and was then picked up and rolled by the trucks of the second, and also by those of the third, according to some witnesses, and was mutilated by the wheels.

As the verdict was for the plaintiff, the case is stated as above from his standpoint. It should be added that the engineer, who was introduced as a witness for the plaintiff, testified that he had just been engaged in some other duty about the engine, and did not know whether he received the first emergency signal. Witnesses for the company said that after the receipt of the signal a stop in three car lengths would have been a very good one. The only evidence of negligence after the discovery of the danger of deceased was the bare fact that the train ran further than the distance within which plaintiff's witnesses said it could have been stopped, and it is claimed that the fatal injuries were inflicted, not by the collision with the first car, but by the trucks and wheels of the car or cars which followed it. But the running of the train beyond the shorter distance must not only have been the cause of the fatal injuries, but must have resulted from some negligent act or omission after the dangerous position of deceased was discovered. Counsel for plaintiff appreciate this, and say:

"We do not want the court to get the notion that we contend, had the death of Miller resulted from the impact itself, or from the fall which it caused, the railroad company would be liable, provided he was guilty of negligence in coming into a collision."

As already stated, the petition disclosed his negligence. The evidence also showed it beyond question. After it became apparent deceased was in danger, the brakemen promptly gave such signals as were within their power, and no charge of negligence can justly be made against them. But, though they discovered the danger, they could not stop the train. All they could do was to give the signals. It is not suggested that the application of hand brakes would have been of any avail. So we must look to the engineer for the negligence within the rule. It does not follow from the mere fact that the train moved the distance it did after the brakemen discovered the danger. Their duty being performed, their knowledge was no more effectual in preventing the accident than would have been that of a flagman at the crossing. The movement of the train was consistent with the undisputed testimony of the engineer that he had been engaged upon some other duty about the engine and did not know he got the first signal of the brakemen, but that when he did get it he acted promptly and did all he could. It should be borne in mind in this connection that, even at the slow speed it is said the train was running, it moved a car length in a few seconds, and brought the trucks of the second car upon the deceased.

Again, the testimony produced by the plaintiff as to the condition of the appliances related to those of the engine, not to the air brakes on the cars, and the failure to stop within the short distance may have been due to a defective condition and operation of the latter, for aught the evidence showed. If so, that would not bring the case within the rule. A defect in mechanical appliances, existing before and continuing until after the injury, not susceptible of being rectified after the discovery of the danger carelessly incurred and before the injury is done, is not supervening negligence within the rule invoked. Were it otherwise, negligence on the part of others would have to be anticipated

and provided for in adopting precautions to prevent accidents; but that is not in the measure of one's duty.

We should further say that, giving the fullest credence to the unusually minute description of what happened to deceased while under the cars, it closely approaches mere conjecture that he was not fatally injured before the second car reached him. We think defendant's motion for a directed verdict should have been granted.

The judgment is reversed, and the cause remanded for a new trial.