## ANDERSON v. BINGHAM & GARFIELD RY. CO.

No. 7356.  Decided February 1, 1950.  (214 P. 2d 607.)

See 52 C. J., Railroads, sec. 2026.  Last clear chance doctrine, see note, 119 A. L. R. 241.  See, also, 38 Am. Jur. 900.

*Rawlings, Wallace, Black & Roberts,* Salt Lake City, for appellant.

*Dickson, Ellis, Parsons & McCrea,* Salt Lake City, *A. D. Moffat,* Salt Lake City, *Calvin A. Behle,* Salt Lake City, for respondent.

WOLFE, Justice.

This action was commenced by the appellant, Lloyd C. Anderson, plaintiff below, to recover damages allegedly incurred when the automobile he was driving collided with a train owned and operated by the respondent, Bingham & Garfield Railway Company, defendant below. The parties will hereinafter be referred to as they appeared in the lower court.

The accident occurred at approximately 9:00 p. m. on May 23, 1947, at a point where the defendant's railroad track crosses U. S. Highway 50, a short distance west of Garfield, Salt Lake County, Utah. There the highway extends in a general east-west direction. The railroad track parallels the highway on the south for approximately one-fourth of a mile east of the crossing, but at the crossing the track bends and crosses the highway in a northwest-southeast direction. At the time of the accident Anderson was driving east on the highway enroute from Tooele to Salt Lake City, Utah. When he left Tooele it was dark and he turned on his automobile headlights. At the trial, Anderson was unable to recollect anything concerning the accident; the last event which he could recall prior to the accident was that he stopped at the junction of the Tooele highway and U. S. Highway 50, and then proceeded east along Highway 50.

The defendant's train, consisting of fifteen gondola type cars being pushed by a Diesel engine was approaching the crossing traveling in a westerly direction and at a speed between seven and ten miles per hour. There were no lights on the leading cars except lanterns carried by three members of the train crew who were riding on the front end of the leading car. The night was dark and the engine's headlight cast a strong beam of light over the tops of the gondola cars. There was evidence that a ridge of mountains lying south of the track has the effect of shrouding equipment moving along the track at night and of removing any

silhouette against the sky which might reveal the presence of a train on the track. The plaintiff contends that doubtless the headlight on the engine created the illusion that the engine was at the head of the train and thus the plaintiff failed to observe the cars ahead of the engine. The plaintiff's view of the crossing was unobstructed. The crossing warnings on the highway were in every respect standard, consisting of a reflectorized cross-buck warning sign and a standard warning sign approximately 417 feet to the west of the crossing.

The estimates of the speed of the plaintiffs automobile as it approached the crossing made by witnesses ranged from 31 to 45 m. p. h. Two of the trainmen on the leading car waved their lanterns back and forth endeavoring to attract Andersen's attention. The bell and the whistle on the engine were sounded. James Paddock, the engine foreman, one of the three men riding on the front of the leading car, climbed to the top of the car in order to signal the engineer to stop the train if it became necessary. As the plaintiff's automobile approached the crossing it appeared to the men on the car as though the appellant hesitated and then tried to drive around the end of the leading car. Automobile tire marks twenty-eight inches long indicating a forceful application of automobile brakes were found on the pavement seventy-two feet west of the point of impact. When the front end of the leading car was at a distance estimated by the three trainmen to be from 10 feet to three railroad car lengths, about 105 feet) from the crossing, Paddock gave the engineer a "washout" signal, i. e., a signal to immediately apply all the braking power at hand. The engineer, Vee Colby, however, testified that "momentarily" before Paddock gave the "washout" signal, he (Colby) had made an emergency application of the brakes. The application of the brakes "slowed down" the train, but a collision was not avoided. The plaintiff's automobile was struck on its side by the front end of the leading car, demolished by the impact, and shoved down the track 217 feet before the

train stopped. The leading trucks of the leading railroad car were derailed by the impact and bumped along the ties until the train stopped. The plaintiff was seriously injured and was hospitalized for nearly six months.

The plaintiff's complaint alleged that the defendant was negligent in several particulars, but prior to the submission of the case to the jury, the plaintiff abandoned all its allegations of negligence except the allegation that the train was operated with defective brakes in violation of the Safety Appliance Act, 45 U. S. C. A. § 1 et seq. Under one of the instructions given to the jury, they were entitled to find that the defendant had a last clear chance to avoid injury to the plaintiff. A verdict of "no cause of action" was returned. The plaintiff prosecutes this appeal contending that the instructions to the jury were erroneous in several particulars and thereby clouded and confused the issue of whether the defendant had a last clear chance. Under the view we take of the case, however, it is unnecessary to consider the plaintiff's contention.

Instruction No. 12 in which the last clear chance issue was submitted to the jury reads:

"Even though an injured party, through his own negligence, placed himself in a position of peril, he may, nevertheless, recover if the one who injures him discovers, or by the exercise of ordinary care, should have discovered him and have avoided the injury.

"Although you may find from the evidence that plaintiff was negligent as he approached said crossing, if you find from a preponderance of the evidence that the airbrakes were defective, and that the defendant, by using ordinary care under the circumstances, could have discovered plaintiff's peril and avoided the collision if the airbrakes had not been defective, then, under those circumstances, negligence on the part of the plaintiff would not bar his right to recover in this case."

Thus the jury was instructed to return a verdict for plaintiff if they found that defective brakes on the train prevented the defendant from exercising what would have otherwise been an opportunity to avoid harming the plain-

tiff who had through his own negligence exposed himself to peril. The plaintiff does not contend that the engineer was negligent in not using greater care to avoid the peril with the means he had at hand; the plaintiff's sole justification for submitting the issue of last clear chance to the jury is that there was evidence that the engineer had adequate and sufficient time within which to have avoided the accident had the brakes performed properly and efficiently.

There is a diversity of judicial opinion in this country as to the question presented by the fact situation of this case. Stated succinctly the question is this: Does a precedent act of negligence on the part of a defendant, whether it be of omission or commission, whereby the defendant has rendered himself powerless to avert an accident after discovering that it is impending, make the defendant liable to a plaintiff who has through his own negligence exposed himself to peril? It is immaterial for our purposes here whether the plaintiff is inattentive and thus negligent or whether the plaintiff is unable to extricate himself from a position of peril into which his negligence projected him. *Graham v. Johnson*, 109 Utah 346, 166 P. 2d 230, on rehearing 109 Utah 365, 172 P. 2d 668.

The American Law Institute in its Restatement of Torts, Secs. 479, 480, adopts the view which is declared by Francis H. Bohlen in an article appearing in his Studies in the Law of Torts, p. 536, 539 and also appearing in 66 University of Pennsylvania Law Review, 73, as the overwhelming weight of authority in the United States. Section 480 of the Restatement which is applicable to the fact situation of the instant case states:

"A plaintiff, who, by the exercise of reasonable vigilence could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation, and

"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his *then existing ability* to avoid harming the plaintiff." (Italics added.)

The comment on clause (c) (found under Sec. 479) is as follows:

"(f) *Antecedent lack of preparation.* * * * If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable. All that is required of him is that he use carefully his then available ability. Thus, if A, a railroad engineer, discovers a wayfarer helpless on a highway crossing which he has entered without taking precautions to see whether a train was approaching, and A thereafter does all which is then in his power to stop the train before it hits the traveler, the traveler may not recover against the railroad although his position was seen in ample time to stop the train had the brakes not been negligently permitted to be in bad condition. So too, if a railroad train is exceeding the statutory speed limit in approaching a level crossing but the engineer does not see the plaintiff's helpless peril on the crossing in time to stop the train, the fact that the train could have stopped in the distance between the two points had it been going at the lawful speed is not enough to make the defendant liable to the negligent plaintiff.

"*Illustrations*: 1. * * *

2. * * *

3. [A is driving his car negligently. In consequence he collides at a crossing with the car of B. A's car is thrown onto the other side of the road upon which C's car is approaching.] C does everything which then could be done to stop the car but is unable to do so because his brakes are negligently defective. C is not liable to A."

An opposite position from the Restatement has been taken by the Judicial Committee of the Privy Council in the leading case of *British Columbia Electric Ry., Ltd.* v. *Loach*, 1 A. C. 719 (1916). That case represents the view taken by the English and Canadian courts and the position as-

sumed by a minority of the jurisdictions in the United States where the question has arisen. In the *Loach* case the plaintiff's intestate, one Sands, was a passenger in a wagon approaching the defendant's railway crossing. Apparently neither he nor the driver looked up or down the track until they were so close to the crossing that they could not stop short of it. The motorman of an electric railway car which was about 400 feet away from the crossing appreciated imminent danger and applied his brakes. The brakes were defective and the train did not stop before it passed the crossing, although the evidence indicated that effective brakes would have stopped the car one hundred feet short of the crossing. The jury found that Sands was contributorily negligent, but it was held that the plaintiff's contributory negligence did not disentitle him to recover damages if the defendant, although not committing any negligent act subsequent to the plaintiff's negligence, had incapacitated himself by previous negligence from exercising such care as would have avoided the result of the plaintiff's negligence. "Were it otherwise," the court noted,

"the defendant company would be in a better position, when they had supplied a bad brake but a good motorman, than when the motorman was careless but the brake efficient. If the superintendent engineer sent out the car in the morning with a defective brake, which, on seeing Sands, the motorman strove to apply, they would not be liable, but if the motorman failed to apply the brake, which, if applied, would have averted the accident, they would be liable."

Attempts have been made to justify the rule of the *Loach* case in terms of proximate cause, i. e., that the defendants negligence was the proximate and the plaintiff's negligence only a remote cause of the damage which ensued. Professor William L. Prosser in his Handbook on Torts, Sec. 54, p. 408, points out that the last clear chance doctrine cannot be satisfactorily explained in terms of proximate cause because the plaintiff's negligence is a substantial and important cause of his own damage and the damage result-

ing from the defendant's negligence is well within the risk created by the plaintiff.

"If injury should result to a third party who is a passenger in the defendant's vehicle, the plaintiff's negligence would be clearly recognized as a responsible cause."

See *Colorado & S. Ry. Co.* v. *Western Light & Power Co.,* 73 Colo. 107, 214 P. 30, where a plaintiff, who was injured when the street car he was riding in collided with a train, recovered a joint judgment against the street car and the railroad companies, although it was later adjudged that as between the two defendants, the railroad company had a last clear chance to avoid the collision. See also *Nashua Iron and Steel Co.* v. *Worcester and Nashua Railroad Co.,* 62 N. H. 159, In *Smith* v. *Norfolk & So. Ry. Co.,* 114 N. C. 728, 19 S. E. 863, 864, 25 L. R. A. 287, the Supreme Court of North Carolina under facts similar to the instant case, rejected the proximate cause theory in the following language:

"* * * if the engineer discovered the deceased as soon as he could have done so by keeping a proper lookout, and immediately applied all the means within his control to avoid the collision, and his failure to do so was by reason of the improper equipment of the train (an omission of duty which might have existed for weeks or months), then the negligence of the defendant would be no more proximate than that of the deceased, and there would be no ground whatever for the operation of the principle of *Davies* v. *Mann* [last clear chance]. If this be not so, and the principle of that case is to be extended to negligence occurring both prior, as well as that which is subsequent, to the negligence of the deceased, it is perfectly useless to pretend that the doctrine of contributory negligence as to cases of this character has any place in the jurisprudence of this state."

Professor Fleming James Jr. in an article entitled "Last Clear Chance—A Transitional Doctrine," 47 Yale Law Journal 704, likewise rejects the proximate cause explanation of the last clear chance doctrine and observes that the *Loach* case and the American cases which follow it seek to

justify their position in the last wrongdoer rule in one form or another. But Professor James states:

"Where the plaintiff is negligent, want of 'precaution' on the part of the defendant should not do as a basis for liability, if only it be not so great as to amount to wantonness. The fact that such default continues to be an efficient proximate cause during every moment until the injury is consummated is no logical reason for regarding it as a fresh wrong committed after the plaintiff's own similar want of 'precaution', for the consequences of that fault, too, are continuing in a manner precisely similar. If a man does the best he can with things as they are, he does no *present* wrong—even if he could do better with things as they should be, and would be but for some past misdoing. A man's conduct at any given point of time is to be judged in the light of what would then be possible to the standard man in his situation. Of course, even this requires impossibilities of the substandard person, but only to the extent that his individual short comings are disregarded. * * *"

Professor James states that the rationale of the cases following the *Loach* rule may be summed up as follows:

"* * * 'A last opportunity which the defendant would have had but for his own negligence is equivalent in law to one which he actually had. He will not be suffered to say that he had not the last opportunity, if he would have had it had he not disabled himself by some prior act of negligence.' Salmond on Torts, 8th Ed. (1934) p. 482. The same line of reasoning applies to the plaintiff but such courts refuse to apply it. There may be a basis for such inequality of treatment but it does not stem from any doctrinal source."

See a critical analysis of the *Loach* case in 53 Harvard Law Review, 1225.

In the American jurisdictions wherein the question under consideration has arisen, the defendant's antecedent negligence which has robbed him of an opportunity to avoid damage to the plaintiff usually has consisted in either operating a vehicle at an excessive speed or with brakes which are defective. Among the cases which have taken the position adopted by the Restatement are: *A. T. S. F. Ry. Co.* v. *Taylor,* 8 Cir., 196 F. 878, 116 C. C. A. 440 (defective brakes) ; *Ill. Cent. Ry. Co.* v. *Nelson,* 8 Cir., 173 F. 915, 97

C. C. A. 331 (defective brakes) ; *State ex rel. Fleming* v. *Bland,* 322 Mo. 565, 15 S. W. 2d 798 (excessive speed) ; *Smith* v. *Norfolk & Southern Ry. Co.,* 114 N. C. 728, 19 S. E. 863, 25 L. R. A. 287 (defective brakes) ; *Johnson* v. *Director-Gen'l of Railroad,* 81 N. H. 289, 125 A. 147 (defective brakes) ; *Ramsdell* v. *John B. Varick Co.,* 86 N. H. 457, 170 A. 12 (no automobile tire chains) ; *Csatlos* v. *Metropolitan St. Ry. Co.,* 70 App. Div. 606, 75 N. Y. S. 583 (defective brakes) ; *Malone* v. *City of Plainview,* Tex. Civ. App., 127 S. W. 2d 201 (excessive speed) ; *Kelley* v. *Keller,* 211 Mich. 404, 179 N. W. 237 (defective brakes) ; *Fike* v. *Pere Marquette R. Co.,* 174 Mich. 167, 140 N. W. 592 (defective brakes) ; *Braden's Adm'x* v. *Liston,* 258 Ky. 44, 79 S. W. 2d 241 (defective brakes) ; *Chesapeake & O. Ry. Co.* v. *Conley's, Adm'x,* 261 Ky. 669, 88 S. W. 2d 683 (no headlight). See the comments in 92 A. L. R. 47, 57 and 119 A. L. R. 1041, 1057.

Professor Fowler V. Harper in his treatise on Torts, Sec. 139, p. 308, favors the rule of the *Loach* case

"if the defendant's antecedent negligence consisted in a failure to provide adequate equipment or efficient facilities to *discover* the plaintiff's perilous situation"

such as the failure to use a headlight on a train at night, *Dent* v. *Bellow Falls & S. R. St. Ry. Co.,* 95 Vt. 523, 116 A. 83,

"but if, *having discovered* the situation, he uses all the facilities at his command to save the plaintiff but the situation has got beyond his control, he should be relieved from the effects of his antecedent negligence, as he is quite as helpless as the plaintiff. What is believed to be the sounder decisions have followed this rule." (Italics added.)

Among the American cases following the rule of the *Loach* case are : *Fairport, P. & E. R. Co.* v. *Meredith,* 46 Ohio App. 457, 189 N. E. 10 (defective brakes in violation of the Safety Appliance Act) ; *Baltimore Consol. Ry. Co.* v. *Rif-*

*cowitz,* 89 Md. 338, 43 A. 762 (excessive speed) ; *Little Rock Traction & Elect. Co.* v. *Morrison,* 69 Ark. 289, 62 S. W. 1045 (defective brakes), and *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 110 P. 226 (excessive speed).

The question under consideration in the instant case is not one of first impression in this court. We had it before us in 1898 in *Thompson* v. *Salt Lake Rapid Transit Co.,* 16 Utah 281, 52 P. 92, 93, 95, 40 L. R. A. 172, 67 Am. St. Rep. 621. There the defendant's electric powered street car was proceeding along Fourth South Street in Salt Lake City at the rate of six or seven miles per hour. The deceased, a deaf and dumb boy fourteen years of age, was in the act of crossing Fourth South a short distance east of the approaching car. As the boy approched the track the motorman observed him and rang the bell but the boy did not look in the direction of the car. The motorman, realizing that the boy was in imminent danger, turned off the power and attempted to reverse the car and apply the brakes. The motorman testified that the brakes were in a defective condition and that due to a shock he received from the motor when he turned off the power, he was delayed in his attempt to reverse the car. The car struck the boy and killed him. There was evidence that had the brakes and the car been in good mechanical condition, the motorman could have avoided the accident. The jury was instructed, among other things, that:

"Even though you believed the son of the plaintiff was guilty of contributory negligence by crossing the track without observing whether or not the cars were running thereon and in operation, or by any other act, and that, if he had been free from such contributory negligence, the injury would not have occurred, yet if the motorman, after the act of contributory negligence complained of, had the opportunity, or could, by the use of reasonable care, *had the brakes and motor of the car been in proper condition, have avoided the accident,* then the act of said motorman, which is the act of defendant company, was the proximate cause of the injury complained of by the plaintiff." (Italics added.)

A verdict was returned for the plaintiff. Exceptions were taken to the above instruction by the defendant and upon appeal it contended that conceding that the defendant was negligent in sending out a defective car, and that the deceased was negligent in crossing the track, it was only the duty of the defendant, after discovering the dangerous situation of the deceased to use with reasonable care the defective appliances he had at hand, and that when the motorman did all he could to stop the car, although its brakes were defective, the defendant could not be held liable. This court affirmed the judgment stating,

"allowing the appliances adopted and in use for the purpose of controlling the car to become out of repair and useless for that purpose, * * * were doubtless, as the jury found, the proximate cause of the accident."

In reference to the contention made by the defendant in that case the court said:

"This position of the able counsel for the defendant is not only ingenious, but is apparently supported by some authority bearing upon the general question of contributory negligence; but we cannot subscribe to such a doctrine *when applied to the operation and management of electric cars upon the streets in a city* where the lives and safety of pedestrians are largely dependent upon safe equipment and perfect condition of the appliances with which a street car is propelled, operated, and controlled." (Italics added.)

As stated earlier in this opinion, the only allegation of negligence relied upon by the plaintiff in the instant case is that the defendant operated its train with defective brakes in violation of the Safety Appliance Act. In this respect the instant case is similar to *Fairport, P. & E. R. Co.* v. *Meredith,* supra. In the *Fairport* case, as in the instant case and the *Thompson* case, the jury was instructed that if the defendant's antecedent negligence prevented him from exercising what would have otherwise been an opportunity to avoid injury to the plaintiff, who had through his own negligence subjected himself to peril, the defendant would

not be relieved from liability. The court recognized that there were cases in which the plaintiff was denied the right to recover under such circumstances, but noted that those cases rest on the rule that in

"ordinary negligence the tort-feasor is not bound to anticipate acts of contributory negligence."

However, the court thought that the case before it depended upon

"facts wholly different in their legal bearing on the rights of the parties involved."

After quoting extensively from *Thompson* v. *Salt Lake Rapid-Transit Co.*, supra, the Ohio court stated [46 Ohio App. 457, 189 N. E. 13]:

"In the instant case, we do not have such surroundings as obtained in the Utah [Thompson] case, but we do have a direct violation of a federal statute under which the defendant was required before leaving the interchange to connect for air at least 50 per cent of the cars in the train, and, because of that mandatory duty, it must be conclusively presumed to have anticipated all consequences of its negligence, which responsibility continued present during all the time it operated the train in its defective condition. When, therefore, the collision happened, it was an existing negligence which made it impossible to save the plaintiff from injury. In the instant case, at most, the plaintiff violated no rule except the natural law to use ordinary care for her own protection, and the defendant violated a federal law enacted for the protection not only of railroad employees, and passengers on railroad trains, but the public generally who are brought in contact with railroads and who might be subjected to danger if such rules were not observed. To hold that the failure to use air brakes after the discovery of plaintiff's danger was not then an act of neglect would abrogate the rule of known danger [last clear chance]. It would under such working of that rule free all railroads from any liability while operating in violation of air brake requirements."

We are not impressed by the above reasoning of the *Fairport* case. So far as the doctrine of last clear chance is concerned, it matters not that the plaintiff has violated

only the "natural law" to use ordinary care for his own protection, while the defendant has violated a federal statute enacted for the protection of railroad employees, passengers and the general public coming in contact with the railroad. We cannot under the thin guise of the last clear chance doctrine compare degrees of negligence. Admittedly, the Safety Appliance Act increased the duty on railroads to operate their equipment with safety, but it did not abrogate or decrease the already-existing corresponding duty on those persons who come in contact with the railroads to take reasonable care for their own protection.

The doctrine of last clear chance is a limitation upon the defense of contributory negligence; the doctrine should not be extended further in its application than it can be supported by cogent reasoning. This court in the *Thompson* case was careful to limit the rule there adopted to the fact situation of that case, viz.

"to the operation and management of electric cars upon the streets in a city where the lives and safety of pedestrians are largely dependent upon the safe equipment."

We stated that

"Persons traveling upon a public street, and crossing street-car tracks, are not held to the same degree of care as when crossing a steam-railroad track. This is so because in the one case the street car can or should be in such a condition as to be brought readily under control, and because the public have a right to travel upon all of the public streets, while such rights do not usually exist with reference to steam railroads."

Without expressing any opinion as to the soundness of the *Thompson* decision, we are convinced that as far as the facts of the instant case are concerned at least, the position taken by the Restatement and the majority of courts in the United States is supported by the better reasoning. Assuming that the defendant in the instant case did operate its train with defective brakes in violation of the Safety Appliance Act, its negligence may be a greater "wrong," as

the *Fairport* case seemed to indicate, but its negligence is not a later "wrong" which the doctrine of last clear chance contemplates and operates upon. Even Missouri under its broad humanitarian doctrine has not seen fit to hold a defendant liable who was unable to avoid injury to a negligent plaintiff because of the defendant's own antecedent negligence. The humanitarian doctrine

"seizes upon the situation as it then exists * * *. The ruling that antecedent negligence of a defendant may be taken into consideration in determining whether he was negligent under the humanitarian rule would in many cases permit an unwarranted recovery for primary negligence [antecedent negligence] through the elimination, under the guise of that rule, of the defense of contributory negligence." *State ex rel. Fleming* v. *Bland, supra* [322 Mo. 565, 15 S. W. 2d 801].

The author of this opinion in a concurring opinion in *Horsley* v. *Robinson,* 112 Utah 227, 186 P. 2d 592, 602, observed that the driver of an automobile upon the highway does not carry with him an "anticipatory last clear chance obligation," i. e. he need not drive so as to create a last clear chance opportunity for others. The same is true of the defendant's duty in the instant case. The Eighth Circuit Court of Appeals in *Ill. Cent. Ry. Co.* v. *Nelson,* 173 F. 915, 917, 97 C. C. A. 331, also was of this opinion when it said:

"A defect in mechanical appliances, existing before and continuing until after the injury, not susceptible of being rectified after the discovery of the danger carelessly incurred and before the injury is done, is not supervening negligence within the rule invoked. Were it otherwise, negligence on the part of others would have to be anticipated and provided for in adopting precautions to prevent accidents; but that is not in the measure of one's duty."

After a careful review of the cases in which the question before us has arisen and the reasoning employed by the courts to justify their positions, we are firmly convinced that there is no logical or justifiable basis why, under the facts of the instant case, the question of ■ last clear chance should have been submitted to the

jury. Equality in treatment to plaintiffs and defendants demands that the doctrine of last clear chance be not invoked unless there is evidence that with the *means at hand* the defendant clearly could have avoided injury to the plaintiff.

The plaintiff in the case before us does not contend that the defendant's engineer should have applied the brakes sooner or could have done more to bring the train to a halt with the means he had at hand; the plaintiff's only basis for submitting the issue of last clear chance to the jury is that there was evidence that with efficient brakes the engineer could have avoided the collision by applying the brakes when he did. We express no opinion whether the evidence justified such a finding because it is undisputed that the engineer had no opportunity to avoid the collision with the alleged defective brakes which he had at hand. Nor do we express any opinion as to whether Instruction No. 12 was erroneous in other particulars.

Thus it follows that even though the issue of last clear chance was clouded and confused by the instructions to the jury, as the plaintiff upon this appeal ■ contends, no prejudice has resulted to the plaintiff since it was erroneous to instruct the jury at all upon that doctrine.

The judgment below is affirmed. Costs to the respondent.

PRATT, C. J., and McDONOUGH, J., concur.

LATIMER, J., concurs in the result.

WADE, J., not participating.