moved because his service as such detailed laborer was not required, and no one was appointed in his place.

The mandamus was properly refused, and the order appealed from should be affirmed, with costs.    All concur.

(7 App. Div. 595)

PENNY v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    June 17, 1896.)

1. NEGLIGENCE—CHILDREN.
   Whether a child seven years old, who was run over by defendant's street car while attempting to cross the track, was sui juris, is a question for the jury, in an action for such injuries, it appearing that he had crossed the track in going to and from school during the preceding year; that he had been told by his mother to be careful, but that he was a timid child, and unable to care for himself like other children of his age.

2. STREET RAILROADS—INJURIES TO PERSON ON TRACK—USE OF SAND.
   It was for the jury to say whether it was negligence not to have had sand on an electric car, for stopping in emergencies, though it was a season when the rails were dry and dusty, where the evidence showed that the streets had been sprinkled shortly before the accident, and that the rails were slippery with thin mud; that in such cases, the wheels of the car will slide, making it very difficult to stop; and that if there had been sand on the car it could have been stopped more easily than it was.

3. OPINION EVIDENCE—PHYSICIANS.
   In an action for personal injuries, plaintiff's mother testified that, since the wound had apparently healed, it had broken out.    A physician testified as to the cause of its breaking out, and said that, from the fact that it had once broken out, it was liable to do so again.    Held, that it was proper to ask him, "What do you say as to whether that result is probable and likely to occur?"

Appeal from circuit court, Monroe county.

Action by Wesley J. Penny, by guardian, against the Rochester Railway Company, for personal injuries.    From a judgment for $5,-303.89, damages and costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals.    Affirmed.

On September 12, 1894, the appellant was operating an electric street railroad with double tracks on Grape street, in Rochester.    The respondent was then an infant of seven years and two months, and resided with his parents on Orange street, 550 feet east of Grape street.    He had lived there for several years before the accident.    On the afternoon of the above-named day, plaintiff, with other boys, had been playing on the walk in front of the house and lot of Mr. Greenwood on the northwest corner of Orange and Grape streets.    About half past 6 Mrs. Greenwood told him it was time to go home, and he started for home on the north cross walk over Grape street.    As he reached the west track of the railroad, and just as he had stepped over the first rail, he was startled to hear some one call to him to "get out of the way," and the gong of a car sounded.  · He glanced towards his left, and saw a car coming from the north, almost upon him.    He jumped to the right, and was struck by the guard of the car, thrown thereon, and carried three-fourths of the way across the street, when he was jolted off.    His right leg was crushed, and, later, amputated at the knee.    The double tracks of appellant branched from a single track about 278 feet northerly from the north cross walk of Orange street.    The whole width of Grape street at the north cross walk of Orange street was visible from the center of the west track 225 feet north of the walk.    When the car reached the north cross walk it

was running from 8 to 12 miles an hour. A city ordinance limited the rate of speed to 7 miles per hour. The car ran nearly to the south cross walk,—over 50 feet,—after the motorman called to plaintiff, before it was stopped. The car was equipped with a sand box, and the evidence tended to show that if it had been provided with sand, and used by the motorman, the accident could have been avoided.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Charles J. Bissell, for appellant.
Henry M. Hill, for respondent.

GREEN, J. It was conceded on the argument that there was evidence of defendant's negligence sufficient to require the submission of that question to the jury. The defendant insisted on the trial, and now contends, that the evidence disclosed such knowledge and appreciation upon the part of plaintiff of the danger of crossing defendant's tracks as rendered him sui juris, and convicted him of contributory negligence as matter of law. The trial court held that the question of whether this child was sui juris or non sui juris was a question of fact for the jury to determine, and that, if they found he was non sui juris, then they must determine whether the parents were negligent in allowing him to be upon the streets unattended; and, further, that if the jury found the plaintiff sui juris, they should pass upon the question of plaintiff's contributory negligence; and so instructed the jury. Plaintiff had attended school for a year before the accident, and in going to and from school crossed over these tracks at the junction of Grape and Orange streets. He had been told by his mother of the danger at this crossing. He had been careful, and usually looked both ways before crossing. At times, when with his mother, he would look to the right and left, and if he saw a car a long distance away would take hold of her dress and detain her. Told by his mother of the danger, like a timid child, he was afraid, and for a time remembered, and yet, like a child, too, he forgot the admonition on the day of the accident, upon being told by Mrs. Greenwood, at whose house he was playing, "to run home, because it was getting dark." Thus suddenly brought to the consciousness that darkness was coming on, and that he must "run home," he obeyed, and started on a trot across the street. A little companion preceded him. The crossing, free from obstruction, was before him. With the one idea of reaching home before darkness came on, seeing the boy ahead of him crossing in safety, forgetful, thoughtless as a child, he passes on to the track, hears a gong, and the quick sharp command, "Get out of the way!" and the car is upon him, and he receives the injury. This evidence, appellant claims, was sufficient to authorize the court in holding as a matter of law that this infant was sui juris. It appears to us that it shows the direct opposite. Here was the heedlessness, the lack of care, of judgment, of deliberation, and of discretion which are the invariable characteristics of those of tender years. He had been told of the danger at the crossing. There was now presented to him another dan-

ger,—the darkness; and he was away from home and mother. All other danger was forgotten, and with the timidity of a child he became intent on the one idea of getting home before he was overtaken by the present danger. Is not this view, under the circumstances, more consistent than that he was capable of considering, or, in that moment of time, of exercising, sufficient judgment to guard against the danger of attempting to cross a public street upon a walk prepared for pedestrians, and which was clear, open, and free from any obstruction? Mrs. Greenwood, a neighbor, says he was a very timid and quiet child, and that "when he had been plagued by the boys, I had him taken home to my house. He never would fight for himself." He had not learned to care for himself, and, with the helplessness of childhood, trusted to others. This act on his part was itself evidence tending to show he was so lacking in judgment and experience as to be irresponsible for negligence upon his part. Scrutinizing this evidence, considering the conduct of this child under all the circumstances surrounding him at the time of the accident, we can readily understand that the tendency of the law in the case of a child of his age is to consider him non sui juris. Certainly, upon the evidence presented, different minds might honestly and conscientiously disagree upon that question. If there is any doubt as to the child being of the age and capacity that, in law, he should be held sui juris, it certainly should be left to the jury to say whether he is so or not. Mangam v. Railroad Co., 38 N. Y. 455, etc.; Ihl v. Railroad Co., 47 N. Y. 317. The appellant relies upon Wendell v. Railroad Co., 91 N. Y. 420, as supporting his contention. It was assumed in that case both on the trial and on appeal that the child whose conduct was in question was sui juris. Neither was it decided in that case that all children of the age of seven years are sui juris. We are of the opinion that the learned trial justice committed no error in submitting that question to the jury. If the jury found that the plaintiff was non sui juris, then they would have to decide the question of whether the parents were guilty of contributory negligence in allowing him to be upon the street unattended. Upon that question the jury had before them the age of the child, his want of maturity, of judgment and memory, his inexperience, his timidity, his inability to care for himself, his habits and training, all presumably within the knowledge of the parents; and also his conduct and acts at the time of the accident; and from this they were to decide whether the parents, in allowing this child to be upon the streets unattended, acted as ordinarily careful and prudent parents would, under like circumstances. If the jury decided that plaintiff was sui juris, then it became necessary to decide whether he had acted with that degree of prudence which might reasonably be expected under such circumstances in a child of his years. They would have been called upon to say whether it was negligence for a child of seven years and two months of age to run across a street-railroad track when he might cross in safety if the approaching car is operated at the rate of speed provided by the city ordinance. It would be a fair question, too, for their decision whether this child,

from lack of appreciation of danger, or from want of maturity and judgment, did not miscalculate in deciding to cross, as his companion did just before him, or in relying upon the crossing being clear as when he started, for the short space of time necessary to reach the opposite side of the street, or in relying upon the railroad company operating its cars over that crossing within the limit prescribed by the ordinance. All of this, and more, did the jury have before them upon this question. The degree of care and discretion used must be determined in each case by the circumstances of that case. The measure of the degree of care and prudence the omission of which would constitute negligence must be graduated by the age and capacity of the individual in each case. In the case of an infant of tender years less discretion is required than in an adult, and the degree depends upon his age and knowledge. The trial court very properly decided to submit that question also to the jury.

Upon the trial exceptions were taken by defendant to the charge of the court and to its refusal to charge as requested. Of these, two only need be considered, as the others are directed to the subjects already discussed and decided, and the conclusion already reached upon that branch of the case governs the disposition that should be made of those two exceptions. Plaintiff's counsel asked the court to charge the jury:

"That if the jury shall find that by the use of sand at the time this accident happened the car might have been stopped in a shorter space than it was, it is a question for them to say whether it was not negligence on the part of the defendant that there was no sand there to use."

By the Court: "I think I have instructed the jury that that is one of the questions in this case that they are to consider in determining this evidence."

Defendant's counsel excepted to the instruction, and requested the court to charge:

"That under the evidence in the case the omission on the part of defendant to provide sand in the box upon the car at the season of the year when this accident occurred is not any evidence of negligence upon defendant's part."

By the Court: "I decline to charge that, and state, as I have already stated, that it is a question for the jury."

Defendant's counsel excepted.

The plaintiff gave evidence tending to show that the rails were dry and dusty at the time of the accident, and claimed that under those conditions the car could have been stopped in much less space and time than it was, as it appeared from the evidence that with a dry rail the car could be stopped almost instantly. The defendant, to meet this, gave evidence tending to show that the street had been sprinkled shortly before the accident, and that the rails were "greasy" with thin mud. One of the defendant's motormen testified:

"On a greasy rail, with the reverse, it locks the wheels, and they slide along until they strike something gritty. On a greasy rail I have known the wheels to be revolving the other way, and the car still sliding in the opposite direction. On a greasy rail I cannot give you any particular distance in which a car can be stopped."

Another motorman said:

"When your track is greasy, a man might stop a car maybe within one hundred feet, running seven miles an hour. Might stop it in a hundred feet, but could not estimate that. You couldn't make any estimate on it any nearer than that."

Another said:

"Assuming the rail was slippery, or a greasy rail, I could not give you any particular distance in which I could bring it to a stop, because the car is sliding, and no one knowing when she will stop when she gets to sliding."

Another testified: :

"Assuming that I had got a greasy rail, I cannot give you any distance in which I could bring it to a stop, either by the use of the brake or the reverse."

The motorman in charge of the car testified that by the use of sand the car could have been stopped more quickly than it was. If this had been done, the injury to the child could probably have been prevented, as only the front wheel of the car barely passed over his leg; a few inches of space would have saved him. The defendant had equipped all its cars with sand boxes. The sand is carried in a box under the seat of the car, and is sprinkled upon the rail by the motorman by pressing with his foot upon a valve. The car in question was provided with a sand box and valve. The defendant claimed that the sand was apt to cake in warm weather, and that it was actually used on its car only in the fall, winter, and spring; but it was shown to be as useful, necessary, and effectual to stop or start a car on a greasy rail in one season of the year as another. The claim of the defendant was that the injury was unavoidable; that by reason of the greasy condition of the rail the motorman could not stop his car in time to prevent the accident. The motorman said he could have stopped it if there had been sand. The necessity for the use of sand on greasy or slippery rails had become apparent to the defendant. Its effect and operation upon rails in that condition were known. It had adopted its use; and provided attachments and appliances on its cars for that purpose. It was the duty of defendant to have its car under control as it approached and crossed Orange street, and, if not actually slowed down, the motorman should have had the means at his command to stop the car immediately upon the appearance of danger. O'Neil v. Railroad Co., 129 N. Y. 125, 29 N. E. 84; Buhrens v. Railroad Co., 53 Hun, 571, 6 N. Y. Supp. 224. This was not a question of the introduction of a new appliance, but as to the obligation of defendant, in the management of its cars, to use an appliance already approved and used, and the degree of care to be exercised in operating its road over the street crossings of a city. The degree of care, in the management of its cars, exacted of a street-railway company using electricity as a motive power, and traversing the streets of a populous city, where danger to pedestrians is to be constantly guarded against, is not less than that required of the company to its passengers. Booth, St. Ry. Law, 33, 305–328, etc. We conclude that the court committed no error in its charge, nor in its refusal to charge upon this subject.

There were exceptions, also, by defendant to the rulings of the trial court upon the admission and exclusion of evidence which also required consideration. The plaintiff's mother testified that since the wound had apparently healed it had broken out, and discharged blood and matter; that the wound was very tender; that she called no physician, but cared for it herself. Dr. Rutherford, testified as to the cause of its breaking out, and that, from the fact that the wound had once broken out, it was liable to do so again. He was then asked: "What do you say as to whether that result is probable and likely to occur?" To this question the defendant's counsel objected as altogether too speculative, and not within the rule. The objection was overruled, and defendant excepted. Answer: "I hardly know how to answer that question. Still, as I said before, it might occur." He had previously testified to this without objection. No objection was made as to want of knowledge by the witness of the facts, or that the form of the question should have been hypothetical. The question was proper as calling for what was probable and likely to occur. Filer v. Railroad Co., 49 N. Y. 42; McClain v. Railroad Co., 116 N. Y. 459, 22 N. E. 1062; Alberti v. Railroad Co., 118 N. Y. 77, 23 N. E. 35; Reynolds v. City of Niagara Falls (Sup.) 30 N. Y. Supp. 954.

There were further exceptions by defendant to the rulings of the court during the examination of one of plaintiff's witnesses. The witness testified that he was at the corner of Grape and Orange streets, and witnessed the accident; that he was 18 years of age; resided in the city of Rochester, and had formerly been a messenger boy; that he had timed himself while walking, and ascertained he could walk a mile in 15 minutes; that he saw the car before plaintiff was struck, and that it was going fast. Question: "How can you express it in any other way?" Answer: "It was going twice as fast as I can walk." The appellant's counsel asked that the answer be stricken out, on the ground that it was within the ruling of the court on former objections, improper manner of proving the speed, and too indefinite. The motion was denied, and defendant excepted. Later the witness stated, "I think this car was going twice as fast as I went when I walked a mile in fifteen minutes." There was no objection to the competency of the witness. The witness expressed no opinion, but stated a fact as to the speed of the car. He knew how fast he could walk. He had been a messenger boy in the city, with experience which that service gave him. The question of the rate of speed of cars is not a question necessarily for experts. It may be shown by a person of ordinary experience. Scully v. Railroad Co., 80 Hun, 197, 30 N. Y. Supp. 61. A man of ordinary experience in walking or riding about a city, observing the movement of other objects, with a knowledge of time and distance, would be capable, the first time he saw an electric car, of forming a judgment of its speed in passing. His evidence might not be as satisfactory as that of a person who had been accustomed to time the speed of cars, but this would not render his evidence inadmissible. It would go to the weight, and not the admissibility, of the evidence.

This evidence was cumulative, and corroborative only of other testimony given in behalf of plaintiff as to the speed of the car. We think it was competent. Salter v. Railroad Co., 59 N. Y. 632; Railroad Co. v. Van Steinburg, 17 Mich. 99; Guggenheim v. Railway Co., 66 Mich. 150, 33 N. W. 161. On the cross-examination of the same witness he was asked, "Did you enter your grandfather's house in the nighttime, through an open window, and take from the room an article of value, and carry it away with you without his permission?" This was objected to by plaintiff "as immaterial and incompetent." Objection was sustained, and defendant excepted. The only object of this question was to discredit the witness. Defendant's counsel insists that the ruling was error, and urges that it was the right of defendant to impeach the character of this witness by a cross-examination, showing that he had committed the crime of burglary. Counsel asked no further question upon that subject, nor did he offer to show that witness had committed a crime. We hardly think that, even though the question had been answered in the affirmative, the crime of burglary would have been established, or that the jury would have been justified in so construing it. The boy, at the time of the trial, was only 18 years old. By the question no time was fixed when he had entered his grandfather's house. It might have been at an age when the law declares him incapable of committing a felony. For aught that appears, he may have done what is implied by the question actuated only by the spirit of boyish mischief, and with no intent of committing crime. The relationship of the parties—grandfather and grandson—seems to us to indicate an innocent, rather than criminal, intent on the part of the grandson. However that may be, the question was upon irrelevant matter, and whether it was allowed was within the discretion of the court, and, in the absence of manifest abuse or injustice, not subject to review. The learned trial justice had the opportunity of seeing the witness, of observing his conduct and bearing while on the witness stand, and was capable of judging whether such examination into this boy's life ought to be permitted or denied. He decided, in the interest of justice, that this witness—so far as appears, perfectly disinterested and truthful—should not be subjected to such an examination, and permit it to be perpetuated in the record of this action. The ruling of the learned trial justice is in accord with the decision in Turnpike Road Co. v. Loomis, 32 N. Y. 127. In the course of the opinion in that case, the court says:

"The judgment now under review was rendered on the assumption that it is the absolute legal right of a litigant to assail the character of every adverse witness, to subject him to degrading inquiries, to make inquisition into his life, and drive him to take shelter under his privilege, or to self-vindication from unworthy imputations, wholly foreign to the issue in which he is called to testify." "If the judgment of the court below be upheld by the sanction of this tribunal, it will embody in our system of jurisprudence a rule fraught with infinite mischief. It will subject every witness, who, in obedience to the mandate of the law, enters a court of justice to testify on an issue in which he has no concern, to irresponsible accusation and inquisition in respect to every transaction of his life affecting his honor as a

man or his character as a citizen." "A question which is alike degrading to answer or decline to answer, should never be put, unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character under the forms of law would contribute little to the development of truth, and still less to the furtherance of justice." "None of the decisions tend to sustain the proposition that the exclusion of inquiries as to the particular transactions, wholly irrelevant to the issue, for the purpose of degrading the witness, is cause for reversal by any appellate tribunal."

While this question has seemingly been one where diverse views have been held by judicial writers, the weight of the authorities has clearly established the rule that it is discretionary with the trial court whether inquiries tending to disgrace a witness shall be excluded or admitted, unless the evidence would bear directly upon the issue. Lohman v. People, 1 N. Y. 380–385; Greton v. Smith, 33 N. Y. 245, affirming 1 Daly, 380; La Beau v. People, 34 N. Y. 223, affirming 6 Parker, Cr. R. 371; Shepard v. Parker, 36 N. Y. 517; Southworth v. Bennett, 58 N. Y. 659; People v. Casey, 72 N. Y. 393; People v. Brown, Id. 571; People v. Crapo, 76 N. Y. 288.

The appellant claims that the trial court did not base its ruling upon the discretionary powers vested in the court, but upon other grounds. We do not so understand the record. In any event, we ought not to reverse upon a correct ruling because founded upon a wrong reason, unless possibly in a case where the grounds given for the ruling could be seen to have misled a party to his injury. Marvin v. Insurance Co., 85 N. Y. 278.

We are of the opinion that the judgment and order should be affirmed, with costs. All concur.