RUDOLPH C. EINSFELD, Appellant, *v.* NIAGARA JUNCTION RAILWAY
COMPANY, Respondent.

*Negligence — injury to a motorman who approaches a railroad crossing without
having his car under control.*

A motorman, employed for a period of two years on an electric railway, which
crosses a steam railroad used merely for switching purposes, who, upon round-
ing a curve 750 feet from the crossing while his car is traveling at the rate of
twelve miles an hour, observes a train standing 315 feet from the crossing, and
does not materially decrease the speed of his car until within 100 or 125 feet of
the crossing, when he discovers that the train is backing towards the crossing,
but is unable to stop his car in time to avoid a collision because of the icy con-
dition of the tracks, is guilty of contributory negligence and cannot recover
damages from the railroad company for the injuries sustained by him in the
collision.

In such a case the situation requires the exercise of the highest degree of care
and prudence on the part of the motorman, and the latter has no right to
approach the crossing without having his car under perfect control.

APPEAL by the plaintiff, Rudolph C. Einsfeld, from an order of
the Supreme Court, made at the Niagara Trial Term and entered in
the office of the clerk of the county of Niagara on the 19th day of
April, 1899, setting aside the verdict of a jury in favor of the
plaintiff for $4,000 and granting the defendant's motion for a new
trial.

The defendant is a railroad corporation owning and operating
about six miles of tracks in or near the city of Niagara Falls.   Its
road, which crosses Buffalo avenue a short distance west of Twenty-
fourth street, is virtually a series of switches designed to connect
numerous manufacturing establishments with the tracks of the New
York Central and Erie railroads, and is used for local traffic only.

On the 30th day of November, 1896, the plaintiff was a motor-
man in the employ of the Buffalo and Niagara Falls Electric Rail-
way Company, and as such was engaged in running one of its cars
between Buffalo and Niagara Falls.   This latter company owned
and operated a surface railway, its cars being propelled by elec-
tricity, and its tracks were laid upon Buffalo avenue and intersected
and crossed the defendant's tracks a little west of Twenty-fourth
street.

At about nineteen minutes after eight o'clock on the morning of the day above mentioned the plaintiff started with his car for the city of Buffalo, and in twenty or twenty-five minutes thereafter he reached a curve which was some eight miles west of the city of Niagara Falls and about 750 feet east of the point where the two roads intersect each other. As the electric car came around this curve the plaintiff discovered an engine and three or four freight cars standing at a point about 315 feet northwesterly of the crossing. At this time, as he testified, he was running at the rate of twelve miles an hour and continued at about that rate of speed until within 100 or 125 feet of the crossing, when he discovered that the freight train was backing towards the crossing and that a collision was likely to occur. He thereupon reversed his power and put on the brake of his car, but, although its speed was quite materially reduced, he was not enabled to bring it to a stop before reaching the crossing, owing, as he said, to the icy condition of the tracks, and, as a consequence, the motor car struck the rear car of the freight train and the plaintiff received some painful personal injuries, for which he seeks to recover damages through the medium of this action.

*Patrick F. King*, for the appellant.

*William B. Rankine*, for the respondent.

ADAMS, P. J. :

The evidence contained in the record before us is clearly sufficient to support a finding that the defendant was guilty of negligence which contributed to the accident in question, for one of the plaintiff's witnesses testified that he was riding upon the engine which was attached to the freight cars and that the engineer had his attention called to the electric car, as it was approaching, in ample time to have stopped his engine before reaching the crossing, but that he apparently paid no heed to the warning and made no effort to avoid the collision which ensued. We think, however, that it is quite as clear that the accident would not have happened but for the contributory negligence of the plaintiff. He says, it is true, that when he first saw the freight train it was stationary and that the engine was headed away from the crossing, which circumstance, he insists,

gave him the right to infer that when the train moved it would be in a forward and not in a backward direction. He had, however, been operating a car over this same road for some two years prior to the accident, during which time he had crossed the defendant's tracks at this point several times each day and was entirely familiar with the use to which the same were put, having, as he says, "seen several freight trains on it moving at one time." He ought, therefore, to have known, and presumably he did know, that the defendant's road was operated merely for switching purposes, and that an engine while thus engaged was as liable to move in one direction as the other. Possessed then, as he undoubtedly was, of this information, he had no right to disregard its obvious import and take any chances as he approached the junction.

The crossing of two railroads, whether the cars thereon are propelled by steam or electricity, presents a situation of danger calling for the exercise of the highest degree of care and prudence upon the part of the persons charged with the operation and management of cars, engines or trains, and no motorman or engineer has any right to approach a crossing under the circumstances which this case discloses without having his motor or engine under perfect control. (_Coddington_ v. _The Brooklyn Crosstown R. R. Co._, 102 N. Y. 66; _Martus_ v. _Delaware, L. & W. R. R. Co._, 36 N. Y. Supp. 417; _Wynne_ v. _Atlantic Ave. R. Co._, 35 id. 1034; affd., 156 N. Y. 702; _Penny_ v. _Rochester R. Co._, 7 App. Div. 595; affd., 154 N. Y. 770.)

This, however, is precisely what the plaintiff was doing, for, by his own admission, he came around the curve at the rate of twelve miles an hour and did not very materially lessen the speed of his car until within 100 or 125 feet of the crossing, at which point he, for the first time, discovered that the freight train was in motion, although it had been in plain sight from the time he first reached the curve. Upon perceiving that a collision was likely to occur, he undoubtedly did what he could to prevent it; but the car was then running so rapidly and the track was so slippery that he found it impossible, even by reversing the power and using the emergency brake, to bring his car to a stop before it came into contact with the train. In these circumstances the plaintiff not only failed to exercise good judgment and ordinary prudence, but he was proceeding

in direct violation of a rule of his company which required that at all street and railroad crossings he should "slow up and look out," or, as one of his witnesses put it, that he should not run at a higher rate of speed than four or five miles an hour.

In view of the facts to which we have adverted, and we have collated only such as are most favorable to the plaintiff, we think the learned trial justice was justified in finally holding that, as matter of law, negligence must be imputed to the plaintiff, which necessarily defeats a recovery.

The order setting aside the verdict and granting a new trial should, therefore, be affirmed.

Order affirmed, with costs.

All concurred.

Order affirmed, with costs.