FRANK W. TERWILLIGER, Respondent, *v.* BROWNING, KING & COMPANY, Appellant.

Third Department, November 10, 1920.

Landlord and tenant — action against landlord to recover damages after offer to redeem rejected — evidence showing that portion of demised premises were subject to paramount title of municipality — rejection of tender because tenant claimed possession of entire premises — verdict for plaintiff against law and evidence.

In an action brought by a tenant against his landlord to recover damages for keeping the tenant out of possession, it appeared that after the tenant had been dispossessed by summary proceedings, he made a tender and offered to redeem the premises as authorized by section 2256 of the Code of Civil Procedure. The demised premises consisted of a Turkish bath, a portion of which occupied a vault under the sidewalk in the city of New York, of which the lessor had occupancy by sufferance of the city and subject to its paramount title. As the Hudson and Manhattan Railroad Company required a temporary use of said vault for the purpose of constructing an underground railroad, the city of New York and said company notified the lessors that they were required to remove their property from the vault during the underground construction, and it is conceded that the city had legal right to make use of such vault. The

lessors gave a lease to the railroad company for the purposes of said underground construction, said lease binding the railroad company to restore the premises to their former condition, which lease was made subject to the plaintiff's rights as tenant and subject to his right of redemption. It further appeared that the plaintiff in making the tender necessary to his redemption, claimed a right to possession of the entire premises including the vault and that the tender was rejected by the defendant upon said ground. Evidence examined, and

*Held,* that a verdict for the plaintiff is against the law and evidence, and that a new trial should be granted.

KILEY and WOODWARD, JJ., dissent, with opinion.

APPEAL by the defendant, Browning, King & Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 10th day of June, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of May, 1919, denying the defendant's motion for a new trial made upon the minutes.

*Charles P. Northrop* [*A. T. Clearwater* and *C. S. Clark* of counsel], for the appellant.

*Abraham Feinstein* [*Augustus Van Wyck* and *Paul F. Lorzer* of counsel], for the respondent.

JOHN M. KELLOGG, P. J.:

In *Terwilliger* v. *Browning, King & Company* (152 App. Div. 552), a former action between these parties, among other things, it was determined that the material facts found in the order of redemption, made under section 2259 of the Code of Civil Procedure, were *res adjudicata* and binding upon the parties and that by the fact of tender the tenant became entitled to the possession of the property subject to the lease, but that the defendant owed him no active duty to put him into possession especially where there was an intervening lease. In this action, afterwards brought, the decision (222 N. Y. 47) was made upon demurrer to the complaint that a cause of action was stated if the defendant absolutely and continuously refused to deliver possession or to permit plaintiff to secure possession, or destroyed the property to prevent redemption. This record for the first time puts the actual facts before the court and the former decisions on demurrer

cannot aid us, except so far as they actually decide a legal question arising upon the facts now appearing. The facts for consideration are changed by the answer and the evidence and present an entirely new situation.

Throughout this litigation the claim that the defendant dismantled the property and destroyed the right of redemption has played an important part and probably has misled the jury. The position is unreasonable and untenable. A part of the bathing establishment leased extended beyond the defendant's property line and into the vault under the sidewalk. The use of that part of the property was permitted by the city but was subject to its paramount right, and the lease recognized that fact. The Hudson and Manhattan Railroad Company was to pass through a tunnel under the street and under the vault in which a part of the bathing equipment was and the city gave the plaintiff and the defendant written notice of that fact, requiring them to remove their property from the vault, areaway and stairs under the sidewalk and roadway to be so used on or before December 20, 1909, and in default of such removal the railroad company would remove it at their expense. The railroad company served upon each of said parties a similar notice, requiring removal on or before December 21, 1909. At the time the dispossess order was made the excavation in Sixth avenue had reached this property and it was then necessary to enter and use the vault for the purposes stated. It is conceded that the city had the legal right to take and use it. Undoubtedly the lease was made in good faith; it gave to the railroad company no right which it otherwise did not have, and the dismantling of the property, which is so much talked of, was simply the act of the railroad company in using the vault for the necessary purpose of its construction and in removing the leased property therefrom. If the defendant's engineer assisted in disconnecting some of the pipes, it was undoubtedly to protect the other leased property and was preparatory to the removal of it from the vault. The lease to the railroad company was from March 1, 1910, to November 1, 1910, at $250 per month, and gave the railroad company the right to use the premises leased for the purpose stated, and that company was bound to restore the premises to their former condition. The lease was made

subject to plaintiff's rights as tenant and his right of redemption. It is conceded in the case: " That after the completion of the construction of the Hudson & Manhattan Railroad Company in Sixth Avenue, that no part of the building and basement and vault thereof of the premises 534–536 Sixth Avenue was taken or occupied by such railroad. That the work of the construction of such railroad commenced on the 3d day of March, 1910, and such work was completed and the premises, basement and vault were restored to their former condition on or about the 1st day of September, 1910." There was, therefore, no destruction of the bathing establishment. Some of the bathing property was removed from the vault into another part of the leased premises temporarily and was to be replaced without expense to defendant or the plaintiff.

Section 2259 of the Code of Civil Procedure contemplates that after redemption is made under section 2256 by a tender or payment, either party may petition the court for an order " establishing the rights and liabilities of the parties upon the redemption " and that after an opportunity to be heard a final order should be made " as justice requires." The order of redemption is part of the complaint and of the answer and was duly received in evidence on the offer of plaintiff. It conclusively established between the parties that there was due the defendant as rental $8,709.12, after giving the plaintiff credit for the rentals received from the Hudson and Manhattan Railroad Company; that the premises had been redeemed by the tender on the 24th day of March, 1910; that the Hudson and Manhattan Railroad Company was in possession of a part of the leased premises under the lease mentioned, and that upon payment of the rental found due and the other sums stated in the order, the plaintiff was entitled to possession of said property subject to the railroad company lease. The words of the order, " shall be let into possession," as we held in 152 Appellate Division, 552, mean only that he is entitled to the possession. The order shows on its face that defendant could not put plaintiff in possession. The order means that plaintiff may enter into possession and defendant shall not prevent or interfere with his going into possession. There is no determination in the order that the defendant had refused to allow the plaintiff to go into posses-

Third Department, November, 1920.      [Vol. 193.

sion or had kept him from taking possession, subject to the lease. It was, therefore, error for the presiding justice to hold that the plaintiff could still litigate the amount due for rental because the defendant had not alleged estoppel in the answer. The defendant's exception to that ruling was well taken and the disallowance of the amount as a counterclaim was against the evidence and erroneous.

As a matter of fact the defendant did not withhold the premises from the plaintiff. The plaintiff never demanded the possession of the property subject to the lease. In contemplation of law, after the tender he was practically in possession as lessee subject to the rights of the railroad company. No action of defendant prevented him from taking possession. A refusal of the tender could not affect the tenant's rights. A proper tender, although refused, is in itself a redemption. The plaintiff's evidence shows that plaintiff, his lawyer and the man who owned the money went to the defendant's place and in substance told the Brownings, who represented the defendant, that they tendered the money, producing it, and wanted the baths. They conceded that the Brownings in substance said that the money looked good to them; they would be glad to take it, but they would call up their lawyer and give them an answer presently; and that they called their lawyer on the telephone and after a consultation with him, returned and said that they were sorry not to take the money but that the lawyer advised that it was out of their hands and that plaintiff had to go to the Hudson and Manhattan Railroad Company to get possession. That answer is only consistent with the fact that the defendant wanted the money and the only obstacle in taking it was the outstanding lease to the railroad company and their possession under it. It was then the duty of the plaintiff, if he wanted the property, to ask the possession of the baths subject to the rights of the railroad company. In effect, the defendant offered that right. Thereupon the plaintiff returned the money to the owner, who was there with them. It is significant that they did not call the owner of the money to swear as to the transaction.

The defendant's version is that when its lawyer, Northrop, was called on the phone he dictated an answer to defendant's stenographer in substance that they willingly accept the money

and turn over the property, but it is subject to the rights of the railroad company under its lease. The plaintiff's lawyer had the money during the entire interview. He said, " Then you cannot deliver possession," and went away with the money. Two of the Brownings and the stenographer in substance swore to that state of facts. It is improbable that after the Brownings called up the lawyer, who dictated an answer, they should give an answer directly opposite and state that it was what the lawyer said. The deposition of one of the Browning brothers was read in evidence, he being sick and unable to attend the trial. The deposition indicates that he wrote down the answer dictated by Northrop and then gave it to the stenographer. The plaintiff claims that no dictated answer was read. Northrop was permitted to swear that he dictated an answer to Browning over the telephone. The court did not permit him to say that the paper put in evidence was, in fact, the very matter dictated by him to Browning. The defendant excepted to the ruling. The judgment is so manifestly wrong that it is unnecessary to consider this exception and other exceptions in the case. The plaintiff's version is unreasonable. The manner in which the plaintiff got the money and made the alleged tender makes it clear that he did not want the possession of the property. His theory was that the bathing establishment was destroyed immediately after defendant was put into possession and it could not be returned. He evidently thought it was safe to make a tender and it was made in a way to prevent acceptance. The alleged tender was evidently made as the basis of a lawsuit for damages and without any intent to get the property. The owner of the money did not let it out of his sight and it was immediately returned to him.

Plaintiff was not entitled to the possession of the entire property. It knew of the terms of the lease to the railroad company. It demanded too much and it is safe to refuse to comply with an excessive demand. The defendant treated the matter fairly and stated the fact which the plaintiff knew that it could not deliver possession on account of the lease. It did not defy or challenge the plaintiff's right to possession; it did no act to keep the plaintiff from the possession. There can be no doubt of defendant's good faith in doing what it did,

and upon no theory of law can its action be held to be a with-holding of the property or preventing the plaintiff from taking possession of it under the lease. The plaintiff by the fact of redemption became the owner of the lease. The defendant did not refuse to turn it over and was not asked to do so. To make a conversion of property by demand or refusal, the refusal must be absolute and unqualified and, if it was reasonable and made in good faith, it is not conversion. (*McEntee* v. *New Jersey Steamboat Co.*, 45 N. Y. 34.) Just what took place at the time of the alleged tender is not very material, because, as we have said, the order for redemption established the fact that there was a tender. This discussion is only necessary as bearing upon the case generally and tending to show that the alleged tender was in a way fictitious; that there was no *bona fide* demand for the possession of the property subject to the lease and no refusal.

The verdict is peculiar in form. It awards to plaintiff $6,200 per year with interest from August 1, 1910, until the end of the lease, thereby determining in substance that the rental of the property was worth that amount more than the rent to be paid. Concededly by all the experts there had been no change in value of property in the locality for the better since the lease, unless it was a moderate improvement within the last year or two. All the experts give the value of the premises for one year and then repeat the same value for the succeeding years. There was no evidence that the rental value of this property was substantially in excess of the rent to be paid. The plaintiff called two real estate experts, neither of whom had any knowledge of or experience with Turkish or Russian bath property or their rental value. Concededly there are no similar basements in that locality which are rented separate from the stores. Neither had any particular knowledge of the property and in giving an answer to a hypothetical question, one fixed its rental value as a bathing establishment at $24,670; he valued the basement without the baths at $13,736. The other apparently in a like manner and with like knowledge fixed the basement rental at $11,600, but fixed the rent as a bathing establishment at $21,020. To the basement value he adds interest on $50,000, which was the approximate cost of installing the baths, $3,000; depreciation on baths $2,500 per

year; extra costs of engineer $1,300; extra cost of coal $900. It needs no argument to show that these items have no bearing upon the rental value of this establishment. The defendant's expert gives the rental value of the entire property at about one-half of the plaintiff's experts' estimate for the basement. Evidently the Brownings are competent business men. Three years before the lease to the plaintiff they, through Levy, made the basement into a Russian and Turkish bath establishment at an expenditure of about $50,000, with a lease to him for a long term of years for $10,000 per year. After figuring the interest on the cost of the equipment, proper depreciation, the extra cost for an engineer and coal, which items, according to plaintiff's experts would aggregate about $7,700, would leave about $2,300 per annum as the rent of the basement. It is absurd to say that any man permitted to be at large would make the basement into a bathing estabment with a rental of $11,000 per year if the basement alone, without the $50,000 expenditure, could command a rental of upwards of $11,000. It is apparent from the subsequent history of the property that the improvements were made in an effort to make the basement rentable and produce some net income. Plaintiff's experts furnish no evidence which should influence a court of justice in fixing the rental value of this bathing establishment.

Levy, who equipped the baths under his lease and used them for three years at a rental of $10,000 a year, found the business unprofitable. There were no customers for the baths except those who followed him from another locality. The question was, how much the bathing equipment enhanced the rental value of the basement property. No man was more competent to speak upon that subject than Levy, who had been in the business and who installed the equipment and had rented and used the place for three years. It was error to exclude his testimony as to the rental value and that for three years there was but little transient trade from the locality. The evidence indicated that the rental he agreed to pay defendant could not be earned by the property and he voluntarily surrendered the long term lease which he had. He lost many thousand dollars in the business. The plaintiff's experience in the property for the time he used it was that there was no real

value to it as a bathing establishment. In January, 1909, he obtained a concession on the cash rental to be paid on the ground that the business was poor and unprofitable. On July 6, 1909, he wrote the defendant a letter, as follows: "DEAR SIR.—The bath business for the last two months has been very poor. I was doing fairly well until Mr. Fleischmann began to give out free tickets again. Since that time I have done practically nothing. We must make different arrangements for rent during July, August and September as there are a great many bath repairs which must be done this summer, and I don't think it possible for [me] to raise any more cash before fall," and was given another concession on the rent. The fact that the place had been rented twice and it did not earn the rental is substantial evidence on the rental value. The bathing equipment was a detriment to the property unless a bathing establishment could be successfully carried on. There was no real basis for fixing the rental value of the property in the absence of a knowledge as to whether or not a profitable business could be carried on there. The defendant after plaintiff was dispossessed made an earnest and continued effort through agents, placards and otherwise to rent it for a bathing establishment and otherwise but without success, and for many years thereafter could not rent it for any purpose. It has been dead property. Concededly the history of the property as a bathing establishment and the inability to rent it for any other purpose overwhelmingly establishes the fact that the property was not worth to exceed the rent agreed to be paid.

The verdict is against the law and evidence and a new trial should be granted, with costs to appellant to abide the event.

H. T. KELLOGG, J., concurs; COCHRANE, J., concurs in the result on the ground of erroneous rulings in proving damages and also on the ground that there should be credited to the defendant against such damages the amount fixed by the Municipal Court order of July 30, 1910; KILEY, J., dissents, with an opinion in which WOODWARD, J., concurs.

KILEY, J. (dissenting):

On the 3d day of April, 1908, the defendant, a foreign corporation, leased to the plaintiff the basement of its property

at 1265-1269 Broadway, New York city, to be used as a Russian and Turkish bath establishment, which basement was then equipped and ready for use as contemplated in said lease. Said term, as provided in the lease, was to extend to May 1, 1924 (sixteen years); the annual rental was stipulated in the lease at $11,000; in addition the second party, plaintiff herein, was to pay at the rate of $800 per annum for use of water until the same could be metered, after which time he was to pay the meter rate. In and by the same instrument the second party, the plaintiff, agreed to take over the basement of adjoining premises, 1263, and pay therefor as annual rental the sum of $1,000. A portion of the leased space was held by first party by permit from the city and extended out under the sidewalk, and it was provided in said lease that if any portion of said leased premises should be taken under the power of eminent domain so as to interfere with the contemplated use thereof, within certain limitation therein named, the lease, at the option of the party of the first part, should cease. It may be said here that the first party, the appellant herein, never took advantage of the privilege of the option. Plaintiff went into possession of the premises under his lease and carried on therein the business for which he leased them, viz., Russian and Turkish baths and accessories. It appears from the record that difference arose in February, 1909, between the parties and the respondent herein; it was claimed by appellant that the respondent defaulted in payment of his rent. Summary proceedings were instituted by the landlord which resulted in the issuing of a warrant dispossessing this respondent. The record permits of the inference that before the dispossess proceedings appellant had negotiated with the Hudson and Manhattan Railroad Company for an agreement or lease for a portion of the space occupied by respondent. The railroad company was about to exercise and assert its privilege had through a franchise to construct a tunnel under the street near these baths and through a portion of the premises. It was necessary to use a further portion to shore up and brace the buildings and in so doing remove interior structures, marble casings, etc.; to build brick walls through space occupied in properly conducting the respondent's said business — such a lease was made between appellant and the railroad company

for the term commencing March 1, 1910, and ending November 1, 1910. The summary proceedings aforesaid were instituted under the Code of Civil Procedure (Chap. 17, tit. 2), wherein it is provided (§ 2256) that if the proceedings are instituted for non-payment of rent and the unexpired term of the lease exceeds five years, proceedings may be had to redeem said premises in accordance with the order to be made therein as provided in section 2259 of the Code. Previous to March 24, 1910, the proceeding contemplated in said section was had and it was adjudged that respondent herein was indebted to or liable to appellant in the sum of about $4,700 and such sum was duly tendered appellant and appellant refused to accept the same. Thereafter an action was brought against appellant landlord for damage based upon the keeping of the tenant out of possession. The defendant, appellant here, demurred to the complaint upon the ground that the same did not state facts sufficient to constitute a cause of action, urging that the tenant having proceeded under sections 2256 and 2259 aforesaid had exhausted his remedy and that no relief was available to him other than that provided in section 2259. The Special Term sustained the demurrer and the tenant, respondent here, appealed to the Appellate Division where said order of the Special Term was affirmed with leave to amend on payment of costs; no opinion was written. (147 App. Div. 928.) From the course of litigation in this action as it is gleaned from the records before us, the plaintiff served an amended complaint after the affirmance of the order in 147 Appellate Division, 928, and defendant again demurred, plaintiff brought on the trial or argument by motion for judgment upon the pleadings, which motion was granted with leave to defendant to plead. An appeal was taken from the judgment to the Appellate Division upon which appeal the order granting judgment in favor of plaintiff was reversed, holding the complaint did not state facts constituting a cause of action and giving plaintiff leave to again amend his complaint on payment of costs. Plaintiff sought and procured an order under section 190 of the Code of Civil Procedure permitting him to review the judgment entered on the decision of 152 Appellate Division, 552. A motion was made to the Court of Appeals to dismiss the last-named appeal because leave to go to said court was

not procured in accordance with the provisions of section 191 of the Code of Civil Procedure, in that the order granting such leave was not procured at the term making the determination or the next term thereafter. The motion was granted and the appeal dismissed (207 N. Y. 479). That action was discontinued and the present action commenced in March, 1914. Defendant demurred to the complaint in this action upon the same ground which prevailed in the previous action; from that decision an appeal was taken to the Appellate Division (165 App. Div. 799). The Special Term was affirmed by a divided court, Mr. Justice WOODWARD dissenting with an opinion in which HOWARD, J., concurred. From the judgment entered on this decision the plaintiff appealed to the Court of Appeals, where the interlocutory judgments and final judgments were reversed. The Court of Appeals adopted the construction contended for by Mr. Justice WOODWARD (222 N. Y. 47). It should be here observed that after the abandonment of the first action by plaintiff he again took proceedings for redemption of the premises under the provisions of the Code of Civil Procedure applicable thereto and to which reference has hereinbefore been made. The order in the last-named proceedings was made July 30, 1910, which provided that upon payment by plaintiff to defendant of the sum of $8,709.12, the plaintiff be let into possession of said premises. The decision in the Court of Appeals (222 N. Y. 47) seems to decide two important questions in favor of the plaintiff, viz., that he has a cause of action for damages, if any has accrued, and that a tender of the amount due within a year after the termination of the dispossess proceeding is a proper condition precedent for bringing such action. The case has been twice tried, the first trial resulting in a disagreement. Upon this trial plaintiff was successful, and if the errors complained of by appellant are not vital, the judgment must be sustained. That plaintiff, respondent here, did not exhaust his remedy by pursuing defendant to the fullest extent under statute providing for summary proceedings, is held in 222 New York, 47. Section 2256 of the Code of Civil Procedure uses the words " payment or tender," and the Court of Appeals has held in the case last cited that a tender was made before bringing the first action, and as that was a necessary prerequisite to the bringing of the present action, it is in

Third Department, November, 1920.    [Vol. 193.

order to examine that question before consideration of the other questions is had. The evidence on the part of plaintiff makes out a *prima facie* case of the tender on August 3, 1910, to the defendant, in accordance with the provisions of section 2256 of the Code of Civil Procedure, of $8,850, in gold certificates; the excess over the $8,709.12 was to cover interest accruing after the order under section 2259 was granted and before the tender, as alleged, was made. It appears, *prima facie*, that one of defendant's officers took the money into his possession and counted it; that he said possession of the bath could not be given; that plaintiff could go to court with it and not to bother the defendant any further about it. The defendant admits that plaintiff was there as testified on his part, had money in his hands and that the officer of defendant to whom the money was offered was anxious to receive it. The evidence of what took place at the time of the last tender is testified to by about an equal number of witnesses, that is by an equal number of those who were in a position to hear and understand what was being done. The defendant called its stenographer, and either he or one of the officers talked over the telephone with defendant's attorney, with the result, as testified to on the part of the defendant, that the offer to accept was written out and read as follows: " Replying to your question, we hereby inform you that we are ready and do accept the money, and do hereby give him possession of the property upon receipt of the money, subject to the right (if any) of the Hudson & Manhattan Railway Company, as tenants, and under and pursuant to the terms and conditions contained in his lease with *your company.*" The trial court charged the jury that if that paper was read to the plaintiff it constituted an acceptance of the tender. Thus the question of the tender was specifically called to the attention of the jury and the crucial facts, either to affirm or negative the performance of the condition precedent, were boiled down into the smallest compass attainable. The plaintiff's evidence is to the effect that nothing of the kind occurred; the jury by its verdict found with the plaintiff. Defendant's evidence as to the last tender, and that is the only one we are concerned with here, is unusual and conflicting. One of the officers of the defendant swears that he took the words contained in the

above so-called acceptance from the attorney over the telephone and stated them to the stenographer. The stenographer's evidence seems to be to the effect that he took the message and then went to his typewriter and transcribed into longhand on a white piece of paper; two were put in evidence, one white and one yellow and both at different times claimed to be the original. On the first trial an officer of the defendant testified he had looked for it and could not find it, and defendant's attorney stated in court it was not in existence; the stenographer testified that it had been kept in a drawer, never had been lost, and that the defendant's officers knew of its existence and that it had been taken out of the drawer several times to copy it. So far as the making of the tender is concerned it presented a clean question of fact, the solution of which was aided by circumstances which favored the plaintiff, and the verdict finds ample support in the evidence. While it is not necessary to this finding, it will be observed that the instrument constituting what defendant calls its written acceptance, is conditional and ambiguous. The railway company may have acquired rights against the defendant which would not be tenable as against the plaintiff, and it seems to contemplate some lease made with plaintiff. The paper writing was speaking to the plaintiff but says " under and pursuant to the terms and conditions contained in his lease with your company." The plaintiff had no lease with the railway company. We cannot dismiss the question of tender in this case as settled in favor of the plaintiff by the above finding. The defendant says that conceding the above conditions as found by the jury to exist, still the tender was ineffectual because the tender was not kept good, the money not having been brought into court; that this tender should be, and in law must be the payment of or extinguishment of a debt, and not for the release of a lien upon property. While the Court of Appeals (222 N. Y. 47) did not point out that this case came under either or both of these categories, yet it may be fairly inferred that the situation was taken into consideration where (at p. 54) it is said, referring to the lease with the railroad, " the existence of the lease did not excuse or prevent the defendant from accepting the tender and transferring to the

plaintiff the possession, in so far as it had it, and the lease with the railway company. It lawfully acquired the possession of the premises originally demised. It lawfully made the new lease. It was bound upon the tender·to transfer to the plaintiff such actual possession of the premises originally demised as it then had *and the lease.* The statute provided that thereupon the plaintiff was entitled to the possession of the demised premises subject to the lease which expired November 1, 1910, and to succeed to all the rights and liabilities of the defendant under the lease to the railway company. The defendant, as the complaint avers, absolutely and continuously refused to deliver the possession to him or to permit him to secure the possession, and thereby caused him to sustain substantial damages. The complaint alleges the facts from which spring his right to the possession, the disregard or violation of that right by the defendant and consequent damages. Those facts constitute a cause of action." (Citing *Trull* v. *Granger*, 8 N. Y. 115, and *Bernhard* v. *Curtis*, 75 Conn. 476.) Whether defendant, appellant, accepted the money tendered or not the cause of action for damages, if any, survived. This order which established plaintiff, respondent's right to redeem was in the nature of a lien upon his possession and a judgment, the amount of which he had to tender or pay before getting possession, and that possession must be effected by some act of the defendant. This the defendant refused to do and as it appears from the evidence it was incapable of doing at the time the tender was made. The bath was dismantled, ruined as some of the witnesses testified. The railway company had agreed to restore it to its former condition within the private property lines; but the defendant accepted the sum of $3,000 in lieu of such restoration; this bears out the plaintiff's contention that defendant said it should never permit the premises to be used as a bath again. The tender in this case was to release the lien so that an action for damages could be maintained. To hold that the only purpose of the tender, under the law and the circumstances prevailing here, was for payment of a debt and must be kept good, can find no justification in any aspect of the case. However, respondent's right to recover damages does not depend solely on this finding. The jury found that defendant refused to accept the money when tendered; refused

to transfer possession of the lease with the railway company to plaintiff and refused possession of the premises to him, and that he was told it could not be used for a bath longer, and finally that this appellant had settled with the railway company for damage and had the money ($3,000) in its possession at the time the tender was made, and was, therefore, by its own deliberate act unable to deliver possession, as under the law it was called upon to do. Under these circumstances, plaintiff was not called upon to bring the money into court or make continuous effort and sacrifice to keep the tender a continuous act. It was well said in *Kilpatrick* v. *Dean* (19 N. Y. St. Repr. 837), at page 845 of the opinion, " the law never requires a tender when it would be useless and of no avail." To the same effect are *Lawrence* v. *Miller* (86 N. Y. 131); *Cass* v. *Higenbotam* (100 id. 248); *Exchange Fire Ins. Co.* v. *Norris* (74 Hun, 527); *Stokes* v. *Mackay* (147 N. Y. 223); *Schieck* v. *Donohue* (92 App. Div. 330); *Universal Beer Keg Company* v. *Brown* (9 N. Y. St. Repr. 91); *Hoyt* v. *Sprague* (61 Barb. 497). The trial court gave the proper rule of damages to the jury, viz., the difference between the rent reserved in the lease and the actual annual rental value of the property. The term under the lease commenced April 3, 1908, and was to end May 1, 1924, sixteen years. This action was commenced about March 26, 1914. The plaintiff sought to recover and did recover for the full term of the lease from November 1, 1910, thirteen years and eight months; the difference between the annual rent reserved in the lease and the actual annual rental value was found by the jury to be $6,200 a year. The trial of this action commenced on the 5th day of May, 1919, and ended on the 14th day of May, 1919. The verdict in favor of the plaintiff was for $130,006.25; this is before costs and extra allowance were added. Appellant now makes the objection that this being an action at law plaintiff cannot recover damages for any cause existing after the commencement of the action. (Citing *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Porter* v. *Met. El. R. Co.*, 120 id. 284; *Ottenot* v. *New York, L. & W. R. Co.*, 119 id. 603; *Mitchell* v. *Village of White Plains*, 91 Hun, 189; *Pond* v. *Met. El. R. Co.*, 112 N. Y. 187; *Tallman* v. *Met. El. R. Co.*, 121 id. 119; *Dean* v. *Met. El. R. Co.*, 119 id. 540.) These cases treat

Third Department, November, 1920.    [Vol. 193.

of permanent damage to land or for trespass. Upon the trial the defendant did not raise the specific objection raised here. The plaintiff was entitled to prove his damage to the time of the trial. (*Park & Sons Co.* v. *Hubbard,* 198 N. Y. 136.) From the opinion on said appeal (p. 139) we read as follows: " The rule, however, limiting a recovery in an action at law to damages accruing prior to the commencement of the action is stated below too broadly. Whatever may have been the practice in times gone by, it has been long settled that as a plaintiff must recover for a single wrong, either tort or breach of contract, all his damages in one action, so he may prove at the trial all damage that he has suffered up to that time that is the necessary or natural result of that wrong, and in many cases prospective damages, if they are reasonably certain to follow." Many conditions might arise after the time of the trial of this action to the termination of the lease, over which neither party had control, that would enhance or decrease the annual rental value of these premises; fire might work total destruction and by statute cancel the lease without any attaching obligation resulting as against either party. The question of damages after the trial and for the balance of term named in the lease was highly speculative; such damages as were allowed by the jury for the balance of the term following the time of the trial were not such as were " reasonably certain to follow." The total amount which plaintiff was entitled to recover under the rule of difference in rental value as found by the jury is $55,508.30; from this should be deducted the amount due August 3, 1910, with interest. The time allowed for which damages can be computed at $6,200 a year is from November 1, 1910, to May 14, 1919, on which last-mentioned date the trial of the action closed. This was an unliquidated account, undetermined, and undeterminable up to the time the jury received the case from the court. Interest should not have been ₁figured nor allowed. The appellant concedes and urges that we have power under section 1317 of the Code of Civil Procedure to find such a judgment as the evidence justifies; such contention is sound and proper if such judgment so found does justice to the parties. (*Miles* v. *Casualty Co. of America,* 203 N. Y. 453.) Appellant urges that the taking and rendition of the verdict of the jury was

irregular and, therefore, void; we do not find any such defect pointed out in the record, and the court had power to make the verdict conform to the intent and purpose of the jury. This simply required a multiplication of the amount by the time allowed for and addition of interest; that was stated in the presence of the jury and acquiesced in by the jury. Interest was a mathematical calculation which the clerk could and apparently did figure. (*Clark* v. *Lude,* 63 Hun, 363; *Duerr* v. *Consolidated Gas Co.,* 104 App. Div. 465.) The appellant further urges that too wide a range of cross examination was permitted plaintiff. In *People ex rel. Phelps* v. *Oyer & Term. County of N. Y.* (83 N. Y. 436) at page 460 of the opinion the court says: " Objection is made to the range of cross-examination allowed to the prosecution as it respected the evidence of both Scallon and Genet. In both cases it was searching and severe, and extended over a wide area of subjects and circumstances, and is claimed to have wandered far away from the precise issues involved, and to have seriously and unjustly prejudiced the case of the defendant. Our control over such an alleged error is not absolute. As a general rule the range and extent of such an examination is within the discretion of the trial judge, subject, however, to the limitation that it must relate to matters pertinent to the issue, or to specific facts which tend to discredit the witness or impeach his moral character." This rule is applicable to civil cases. (*Great Western Turnpike Co.* v. *Loomis,* 32 N. Y. 127; *Penny* v. *Rochester R. Co.,* 7 App. Div. 595; *Carey* v. *Brooklyn Heights R. R. Co.,* 124 id. 524.) Motions made to strike·out evidence by defendant upon the trial were in several instances denied. Exceptions were taken, no error is presented and many of them are useless under the rule laid down in *Quin* v. *Lloyd* (41 N. Y. 349; followed in *People* v. *Chacon,* 102 id. 669) and *Hoffman* v. *Lehigh Valley R. R. Co.* (188 App. Div. 414). I find no error or errors that should reverse this judgment as a whole except that the judgment is excessive as hereinbefore pointed out; and under section 1317 of the Code of Civil Procedure we can and it is our duty to decide this appeal in accordance with the letter and spirit of that section. The judgment should be reversed, with costs, unless the plaintiff stipulates within twenty days after this decision is handed down to

reduce the verdict of the jury to $55,508.30, less the amount of last tender and interest, $13,168.35, leaving balance of $42,339.85, and if such stipulation is given by plaintiff the verdict as so reduced with the costs and extra allowance in the trial court to be added to constitute the judgment, and if so modified affirmed, without costs of this appeal to either party.

WOODWARD, J., concurs.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.